Joseph MULLIN, Appellant,

v.

WASHINGTON FREE WEEKLY, INC., et al., Appellees.

No. 00–CV–1199.

District of Columbia Court of Appeals.

Argued Sept. 13, 2001.

Decided Nov. 8, 2001.

Joseph Mullin, pro se.

Robert D. Lystad, with whom Bruce W. Sanford and Lee T. Ellis, Jr., Washington, DC, were on the brief, for appellee Washington Free Weekly, Inc.

Roger L. Amole, with whom Debra S. Bray was on the brief, for appellees Mark E. Brodsky and Morton Bender.

Before STEADMAN, SCHWELB and FARRELL, Associate Judges.

STEADMAN, Associate Judge:

Allegedly defamatory remarks concerning appellant Joseph Mullin appeared in an article in *Washington City Paper (City Paper)*, published by appellee Washington Free Weekly, Inc. The principal issue before us is whether the statute of limitations began to run on the date of publication or not until appellant learned of the article several days later. We follow the virtually unanimous rule in this country and hold that the statute began to run on the date of publication.

## I.

On July 9, 1998, the *City Paper* published allegedly defamatory statements about appellant in the article "Hitting the Pavement: Joe Mullin's Legendary Battle Against Landlord Morton Bender Ends on

the Sidewalk."[1] The article, which centered on a landlord-tenant dispute between Mullin (the tenant) and appellee Morton Bender, included quotes by appellee Mark Brodsky, Bender's attorney, that described appellant as a "freeloader" who did not pay his rent and other like remarks. Mullin, who was out of town at the time of publication, did not learn of the allegedly defamatory statements until several days later, on July 13, 1998.

Mullin did not file his complaint alleging defamation, invasion of privacy false light, and intentional infliction of emotional distress until July 12, 1999. On appellees' motion to dismiss (which the trial court treated as a motion for summary judgment), the court held that all of appellant's claims were time-barred. The court noted that the statute of limitations for defamation claims was one year and that appellant filed his claim one year and three days after publication of the *City Paper* edition containing the allegedly defamatory statements. The court also held that because the other claims were intertwined with the defamation claim, they shared the same statute of limitations and thus were time-barred as well.

## II.

The statute of limitations for a defamation claim in the District of Columbia is one year. D.C.Code § 12–301(4) (2001). "Defamation occurs on publication, and the statute of limitations runs from the date of publication. Where a statement is defamatory on its face, the plaintiff's reputation is damaged immediately upon publication." *Wallace v. Skadden, Arps, Slate, Meagher & Flom*, 715 A.2d 873, 882 (D.C.1998) (citations omitted). It is not contested that the issue of the *City Paper* containing the article about Mullin was generally distributed on July 9, 1998,[2] although appellant did not file suit until July 12, 1999. Appellant tries to widen his window of opportunity by urging this court to adopt the so-called discovery rule in defamation claims.[3] We decline to do so, at least in the case of defamatory statements published in a mass media outlet such as *City Paper.*

As a general rule, "[w]here the fact of an injury can be readily determined, a claim accrues for purposes of the statute of limitations at the time the injury actually occurs." *Colbert v. Georgetown University*, 641 A.2d 469, 472 (D.C.1994) (en banc).[4] But when "the relationship

---

1. *City Paper* is a weekly newspaper of local news delivered to retailers and street boxes in the Washington, D.C. area for immediate free distribution to the public.

2. Under the old common law "multiple publication" rule, every sale or transfer of a copy of the defamatory statement was deemed a separate publication, from which a separate cause of action could arise. Such a rule began to produce bewildering results after the rise of mass periodicals. *See Duke of Brunswick v. Harmer*, 14 Q.B. 185 (1849) (holding that sale of a copy of a newspaper *seventeen years* after it was first published was a separate publication giving rise to a libel claim). Consequently, virtually all jurisdictions have adopted the modern "single publication" rule, i.e., for purposes of the statute of limitations in defamation claims, a book, magazine, or

newspaper has one publication date, the date on which it is first generally available to the public. *See Ogden v. Association of the United States Army*, 177 F.Supp. 498, 499–502 (D.D.C.1959) (tracing common-law history and applying single publication rule); *Foretich v. Glamour*, 741 F.Supp. 247, 252–53 (D.D.C.1990); Restatement (Second) of Torts § 577A (1977).

3. Mullins does not challenge the proposition applied here by the trial court that if the defamation claim is barred, the other claims intertwined with the defamation claim are also barred. *See Saunders v. Nemati*, 580 A.2d 660, 662 (D.C.1990).

4. "Generally, the cause of action accrues, and the statute of limitations begins to run, at the

between the fact of injury and the alleged tortious conduct [is] obscure," this court determines when the claim accrues through application of the discovery rule, i.e., the statute of limitations will not run until plaintiffs know or reasonably should have known that they suffered injury due to the defendants' wrongdoing. *Id.* at 472–73. We have previously applied the discovery rule in such situations as medical malpractice, *see Colbert, supra,* 641 A.2d at 473, legal malpractice, *Ray v. Queen,* 747 A.2d 1137, 1141 (D.C.2000), defective house design and construction, *Ehrenhaft v. Malcolm Price, Inc.,* 483 A.2d 1192, 1202 (D.C. 1984), and repressed memories of sexual abuse, *Farris v. Compton,* 652 A.2d 49, 54–55 (D.C.1994). We deemed the discovery rule appropriate because "the *fact* of an injury [was] not readily apparent." *East v. Graphic Arts Industry Joint Pension Trust,* 718 A.2d 153, 157 (D.C.1998) (emphasis in original).

■■■ In defamation cases, on the other hand, at least where mass media are involved,[5] "the fact of . . . injury can be readily determined," and thus any resulting defamation claims will "accrue . . . for purposes of the statute of limitations at the time the injury actually occurs," i.e., publication. *Colbert, supra,* 641 A.2d at 472. Injuries alleged to have resulted from the distribution of copies of a weekly periodical through the Washington, D.C. metropoli-

tan area may reasonably be considered public in nature, and discoverable as such. As we said in *Wallace, supra,* 715 A.2d at 882, "the plaintiff's reputation is damaged immediately upon publication." Such considerations have led every other court squarely faced with this issue to reject application of the discovery rule in mass media defamation claims. *See, e.g., Schweihs v. Burdick,* 96 F.3d 917, 920–21 (7th Cir.1996); *Bradford v. American Media Operations, Inc.,* 882 F.Supp. 1508, 1519 (E.D.Pa.1995); *McGuiness v. Motor Trend Magazine,* 129 Cal.App.3d 59, 180 Cal.Rptr. 784, 786 (1982); *Flynn v. Associated Press,* 401 Mass. 776, 519 N.E.2d 1304, 1307 (1988); *Holloway v. Butler,* 662 S.W.2d 688, 693 (Tex.App.1983); *Russell v. The Standard Corp.,* 898 P.2d 263, 264–65 (Utah 1995); *see generally* Francis M. Dougherty, Annotation, *Limitation of Actions: Time of Discovery of Defamation as Determining Accrual of Action,* 35 A.L.R.4th 1002 (1985 and 2001 Supp.).[6] We follow these precedents and do likewise here.

■ Anticipating our possible resolution of the major issue in this manner, appellant argues that even if we do not apply the discovery rule to mass media publishers, we should still permit it as to his claims against the non-media defendants, Brodsky and Bender, which were based on

time of the occurrence of a judicially recognizable injury or event constituting a breach of duty. The statute commences at that time even though the plaintiff is unaware of the accrual of his or her cause of action." 2 Calvin C. Corman, *Limitation of Actions* § 11.1.1 (1991).

5. Appellant did not contest that *City Paper* is part of the mass media. We express no opinion as to whether application of the discovery rule might be justified during a time that the defamatory statement was inherently undiscoverable, because it was published secretly and/or the defendant took steps to prevent the

plaintiff from uncovering the statement, or in the case of circulars, newsletters or even newspapers addressed to a specialized readership. *Cf. Tom Olesker's Exciting World of Fashion, Inc. v. Dun & Bradstreet, Inc.,* 61 Ill.2d 129, 334 N.E.2d 160, 164 (1975) (applying the discovery rule to a defamation claim concerning statements within a credit report).

6. To the best of our knowledge, the only case to suggest that the discovery rule may apply across the board to all defamation claims, and that only in dictum, is *Hoke v. Paul,* 65 Haw. 478, 653 P.2d 1155, 1159 (1982).

Brodsky's remarks to the *City Paper* reporter in a private interview. *Cf.* note 5, *supra.* However, since appellant's complaint against these defendants encompasses only those statements that subsequently appeared in *City Paper,* we think publication by Brodsky and Bender was incorporated into the publication by Washington Free Weekly, and the same rules concerning the statute of limitations should govern both. *See Holloway, supra* (a defamation claim against a magazine publisher and a non-media defendant, the source quoted in the article, accrued at the same time).

Because all of appellant's claims were time-barred, the trial court properly entered summary judgment in favor of the appellees.

*Affirmed.*