Ellis MAUPIN, Appellant

v.

Carolyn HAYLOCK, et al., Appellees.

No. 06–CV–270.

District of Columbia Court of Appeals.

Argued May 17, 2007.

Decided Sept. 6, 2007.

Ellis Maupin, pro se.

Christopher E. Hassell, with whom Justin M. Cuniff, Washington, DC, was on the brief, for appellees.

Before KRAMER and THOMPSON, Associate Judges, and STEADMAN, Senior Judge.

THOMPSON, Associate Judge:

Appellant Ellis Maupin was a career employee of the United States. Department of Energy (DOE) and the former President of the DOE chapter of the National Treasury Employees Union (NTEU). On June 7, 2001, Maupin filed a complaint alleging, *inter alia,* that defendant/appellee Carolyn Haylock, a DOE employee who was the President of the DOE chapter of Blacks in Government (BIG), and co-defendant/appellee BIG defamed Maupin through statements made in various documents. On January 23, 2006, without having heard oral argument, the trial court granted defendants'/appellees' motion for summary judgment. The court specified that its ruling was "based on defendants' statute of limitations argument," *i.e.,* defendants'/appellees' argument that Maupin's complaint was barred by the one-year statute of limitations applicable to defamation claims. On March 15, 2006, after the trial court had denied his motion for reconsideration, Maupin noted his appeal to this court.

 Maupin's complaint cited a number of allegedly defamatory documents that were written or (Maupin asserts) republished by Haylock and/or BIG, but on appeal he focuses on only three sets of documents. First, he complains of an article published in BIG's Spring 2000 newsletter, which asserted that Maupin had unfairly revoked Haylock's employee parking permit because Haylock did not support Maupin for re-election as President of the NTEU during a then-recent union election. Second, Maupin complains of a charge that Haylock filed on February 24, 2000, with the Federal Labor Relations Authority (FLRA), in which she accused Maupin of being "corrupt," of "perpetrat[ing] malicious wrongdoings against bargaining unit employees," and of "abuse and misuse of power and clear interference with the proper allocation of parking permits." Finally—as he attempted to clarify at oral argument—Maupin complains that appellees caused to be circulated within DOE a package containing defamatory materials that previously had been forwarded to

United States Senator Mikulski and other public officials.[1] As to all these documents, Maupin contends that his complaint was filed within the limitations period and therefore that the court erred in entering summary judgment and dismissing his complaint. Maupin does not contend that all of these allegedly defamatory statements were made within the year before he filed suit,[2] but he contends that his claims are saved by application of the so-called "discovery rule" [3]—a rule that this court has not heretofore applied to defamation claims.[4]

We resolve this appeal by assuming without deciding that the discovery rule applies in at least some defamation cases. We conclude that, even if the discovery rule were to apply in this case, Maupin failed to meet his burden of showing that he filed suit within one year after he discovered the allegedly defamatory statements.

### The Statute of Limitations and the Discovery Rule

■ A claim for defamation must be filed within one year of accrual of the

1. In his complaint, Maupin also cited other defamatory statements by defendants/appellees and in addition raised a number of non-defamation claims, including conspiracy to commit defamation, libel and slander, and harassment. In his brief to this court, however, he focused on only the three claims identified above. Accordingly, we treat his other claims as abandoned. *See Deramus v. Donovan, Leisure, Newton & Irvine*, 905 A.2d 164, 176 (D.C.2006) ("The inexorable result of appellant's failure to challenge [a point] on appeal ... is that we must deem the point abandoned....").

2. Maupin's contentions as to the publication date of the BIG newsletter have shifted. As discussed further in note 6 *infra*, Maupin's deposition testimony was to the effect that the BIG newsletter was published on June 5 or 6, 2000, *i.e.*, more than a year before the date he filed suit (June 7, 2001). In Maupin's brief to this court, however, he asserts that neither June 5 nor June 6 could have been the publication date because both dates fell on a weekend, when publication would not have occurred. From this, Maupin argues that the newsletter's publication date must have been a later date, within the limitations period. This argument does not support reversal of the summary judgment order, not only because it is based on unsworn assertions that come too late, but also because a check of the year 2000 calendar reveals that June 5 and 6 fell on a Monday and Tuesday, respectively, during that year—rather than on a weekend, as Maupin asserts.

3. Applying the discovery rule, as we have done with respect to many categories of torts, we recognize that the limitations period be-

gins to run not when the tortious conduct occurred, but when the plaintiff "kn[ew] or by the exercise of reasonable diligence should [have] know[n] (1) of the injury, (2) its cause in fact, and (3) some evidence of wrongdoing." *East v. Graphic Arts Indus. Joint Pension Trust*, 718 A.2d 153, 157 (D.C.1998) (citation omitted).

4. *But see Oparaugo v. Watts*, 884 A.2d 63, 74 n. 8 (D.C.2005) (explicitly leaving open the question of whether the discovery rule might apply if the issue were clearly raised and briefed in a defamation case); *Wallace v. Skadden, Arps, Slate, Meagher & Flom*, 715 A.2d 873, 882 (D.C.1998) (suggesting that the time of discovery of the defamatory statements was a relevant factor, but having no need to decide whether the discovery rule was applicable because plaintiff did not deny having been immediately aware of performance evaluations that she alleged defamed her character and professional qualifications); *see also Gibson v. Boy Scouts of America*, 360 F.Supp.2d 776, 780–81 (E.D.Va.2005), *aff'd*, 163 Fed.Appx. 206, 208 (4th Cir.2006) (applying District of Columbia law and holding that plaintiff's complaint was timely because it was filed within one year of his discovery of allegedly defamatory oral statements to Boy Scout officials); *Linguex, Inc. v. Murphy*, No. 93–1903, 1994 WL 289357, at *1, 1994 U.S. Dist. Lexis 8821, at *2–3 (D.D.C. June 21, 1994) (holding that the discovery rule was applicable in a case where an employer made statements that damaged plaintiff employee's reputation as a professional and plaintiff had no reason to suspect that defamatory statements had been made).

cause of action. *See Sturdivant v. Seaboard Serv. Sys., Ltd.*, 459 A.2d 1058, 1058 n. 1 (D.C.1983) ("A suit for libel must be filed within one year of the alleged defamation") (citing D.C.Code § 12–301(4)). In our defamation decisions to date, we have held that the cause of action accrued, and the one-year limitations period began to run, at the time the allegedly defamatory statement was published. *See, e.g., Mullin v. Washington Free Weekly, Inc.*, 785 A.2d 296, 298 n. 2, 299 (D.C.2001) (adopting the "virtually unanimous rule" that in a case alleging defamation through a mass media outlet such as a book, magazine, or newspaper, the limitations period begins to run when the publication "is first generally available to the public").[5]

However, in a footnote in *Mullin*, we also said that we "express[ed] no opinion as to whether application of the discovery rule might be justified during a time that the defamatory statement was inherently undiscoverable," *i.e.*, because rather than having been published in a mass media outlet, "it was published secretly and/or the defendant took steps to prevent the plaintiff from uncovering the statement, or in the case of circulars, newsletters or even newspapers addressed to a specialized readership." *Id.* at 299 n. 5; *see also Oparaugo, supra* note 4, 884 A.2d at 74 n. 8 (noting that "whether the discovery rule should be applied where the statement was undiscoverable" would be "an issue of first impression in this jurisdiction"). Maupin contends that this is a case—like those envisioned in footnote 5 of *Mullin*—in which we should extend application of the discovery rule to claims of defamation. Application of the discovery rule is appropriate in this case, he contends, because the allegedly defamatory statements were not made in a mass media context, but instead were contained in (what the record indicates was the very first issue of) a limited-circulation newsletter; in an FLRA complaint, the content of which was unknown to Maupin until he was approached by an FLRA investigator; and in a packet of correspondence of which Maupin was unaware until a colleague gave him a copy.

## Analysis

◼ A plaintiff cannot "stave off the entry of summary judgment" through "[m]ere conclusory allegations." *Musa v. Continental Ins. Co.*, 644 A.2d 999, 1002 (D.C.1994). *See also* Super. Ct. Civ. R. 56(e) (the plaintiff's "response, by affidavits or as otherwise provided in this Rule, must set forth specific facts showing that there is a genuine issue for trial"). Similarly, a plaintiff's mere unsworn statement of material facts in dispute is insufficient to defeat a motion for summary judgment. *See Johnson v. Hobson*, 505 A.2d 1313, 1316 (D.C.1986); *see also Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 515 (5th Cir.2001) (an unsworn statement "is not competent summary judgment evidence"). And "[w]here the moving party supports the motion for summary judgment with ... deposition responses or other evidence submitted under oath, the opposing party may not rely on general pleadings or a denial, but rather must respond similarly by [providing] material facts under oath which raise genuine issues of fact for trial." *Tobin v. John Grotta Co.*, 886 A.2d 87, 90 (D.C. 2005) (citation omitted). "[O]n [a] defendant's motion for summary judgment on the basis of the statute of limitations, 'it is the plaintiff who then bears the burden of pointing to specific facts of record that would justify the factfinder in concluding that the suit is timely' under the discov-

---

**5.** This is because "[w]here a statement is defamatory on its face, the plaintiff's reputation is damaged immediately upon publication."

*Id.* at 298 (quoting *Wallace, supra* note 4, 715 A.2d at 882).

ery rule." *Yarchak v. Trek Bicycle Corp.,* 208 F.Supp.2d 470, 487 (D.N.J.2002) (quoting *Estate of Sarocco v. General Elec. Co.,* 939 F.Supp. 91, 95 (D.Mass. 1996)) (other citation omitted).

In his opposition to defendants'/appellees' motion for summary judgment, Maupin (who at that stage of the litigation was represented by counsel) failed to meet the burden that the foregoing authorities describe.

**The BIG Newsletter.** To be timely under the discovery rule, Maupin's complaint with respect to defamatory statements made in the BIG newsletter had to be filed within one year of the date when he first saw or became aware of the contents of the newsletter. In his deposition, pertinent portions of which were appended to defendants'/appellees' motion for summary judgment, Maupin stated that he received a copy of the newsletter on "[e]ither June 6 or 7," 2000.[6] As already noted, Maupin filed suit on June 7, 2001. If he received the newsletter on June 6 rather than June 7, which his deposition response confirmed as a possibility, his complaint was time-barred. Because Maupin had the burden

of "pointing to specific facts of record that would justify the factfinder in concluding that the suit is timely," *Yarchak,* 208 F.Supp.2d at 487 (citation omitted), and since his sworn deposition response did not definitively state that he discovered the defamatory material in the newsletter within the year—long period prior to June 7, 2001, the trial court did not err in entering summary judgment as to Maupin's claim with respect to statements made in the newsletter.

**The FLRA Petition.** Maupin asserted in his opposition to the motion for summary judgment and in his brief to this court that it was only in "late July 2000" that he discovered the "Charge Against A Labor Organization" that defendant/appellee Haylock submitted to FLRA on February 24, 2000.[7] However, the only sworn statement that was before the trial court regarding when Maupin discovered the FLRA filing was the statement in Maupin's deposition that the first time he saw the FLRA complaint "was in 2000 I believe when the investigator initially approached me on this."[8] This vague reference to sometime "in 2000" was not

---

6. The following exchange occurred during Mr. Maupin's deposition:

> Q: Mr. Maupin, let me hand you what's been marked as Exhibit 5. I just want to know is this the newsletter that you are referring to?
> A: This is it.
> Q: Did you get a copy of this at or around the time it came out?
> A: I believe I got a copy the day after it came out.
> Q: Do you remember when that was?
> A: Either June 6 or 7. It was around the early part of June 2000 because that's when I filed my EEO complaint.

Maupin's response "Either June 6 or 7" is ambiguous, in that it could be read to mean either that the newsletter came out on June 6 or 7, or that Maupin received the newsletter on June 6 or 7. However, Maupin's brief opposing defendants'/appellees' motion for summary judgment removed the ambiguity.

Referring to the foregoing portion of his deposition transcript, Maupin explained that "Plaintiff during his deposition stated that the newsletter was given to him on June 6th or 7th."

7. We note that the BIG newsletter, which Maupin states he received on June 6 or 7, made reference to "unfair labor practice charges against Ellis Maupin [that] are in the investigative stage with the Federal Labor Relations Authority." Thus, Maupin knew or should have known of the FLRA complaint, even if not its content, prior to July 2000.

8. Notably, Maupin did submit an affidavit along with his opposition to defendants'/appellees' motion for summary judgment, but the affidavit focused primarily on the status of appellee Haylock's union membership and contained no statements regarding when Maupin became aware of the allegedly defamatory documents at issue in this appeal.

enough to enable Maupin to defeat defendants'/appellees' motion for summary judgment. To defeat their motion, Maupin was required to set forth "specific, material facts under oath which raise genuine issues of fact for trial." *Tobin,* 886 A.2d at 90 (citation omitted). Because Maupin's discovery of the FLRA petition on any date before June 7, 2000, meant that his complaint was untimely, his failure to provide, in his deposition or through some other sworn statement, a more specific answer about when during the year 2000 he discovered the petition meant that he did not raise a genuine issue precluding summary judgment.[9]

■ **Other Materials Circulated within DOE.** Maupin argued in his brief to this court and repeated at oral argument that it was only in October 2000 that a colleague who worked in the Office of the General Counsel at DOE gave him a copy of a package of correspondence, containing defamatory statements about Maupin, that had been sent by appellees or their agents to government officials (including Senator Mikulski) and that defendants/appellees also allegedly caused to circulate within DOE. But, having scoured the record that was before the trial court, we find no sworn statement regarding when Maupin was made aware of these materials (at least some of which were authored in 1999). Moreover, although the record is not entirely clear about which materials are part of the package that Maupin obtained from his colleague in the Office of General Counsel, Maupin stated in his deposition that it was on September 16, 1999, (well outside the limitations period) that a union member who worked in the DOE Office of General Counsel brought to his attention a letter contained in "the general counsel package." On this record, we can find no fault in the trial court's entry of summary judgment, on statute of limitations grounds, as to this claim as well.[10]

---

9. Cf. *Foretich v. Glamour,* 741 F.Supp. 247, 251–52 (D.D.C.1990):

> Although they insist that the actual publication date of the November 1988 *Glamour* is a genuine disputed issue of material fact, they have not provided any verified facts refuting defendants' explicit proof that the November 1988 *Glamour* was on sale by October 12, 1988, at the latest. The mere assertion of counsel—within a brief and without any supporting affidavit—that she telephoned local retail outlets and was informed that the February 1990 issue of *Glamour* was on sale January 16 or 17, 1990, is immaterial. Counsel's casual approach does not meet the requirement[ ] ... that when a motion for summary judgment is supported by affidavits, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading. Plaintiffs have raised no genuine issue of material fact with respect to defendants' claim that the November 1988 *Glamour* was published more than one year prior to the filing of the complaint....

(Internal quotation, citation, and footnotes omitted).

10. On November 2, 2005, the parties were scheduled to appear before the trial court for a hearing on defendants' motion for summary judgment, which had been briefed by both sides. Neither Maupin nor his counsel, who had been permitted to appear *pro hac vice,* appeared. Because neither Maupin's *pro hac vice* attorney nor local counsel was present, the court issued a show cause order, requiring Maupin's counsel to show why they should not be held in contempt of court for failing to comply with the requirements of Super. Ct. Civ. R. 101 and for willful failure to appear. At the show cause hearing, which took place on November 10, 2005, Maupin's *pro hac vice* counsel admitted to failure to keep local counsel informed of scheduled court dates in the litigation. The court removed Maupin's counsel from the case and informed Maupin that the court would afford him two months to obtain substitute counsel.

Maupin argues in his brief to this court that the trial court erred in striking the appearance of his *pro hac vice* counsel. Assuming that Maupin's notice of appeal was sufficient to encompass this claim—the gist of which is that the court erred in entering summary judgment when he was without his original

For the foregoing reasons, the order of summary judgment is

*Affirmed.*

counsel or new counsel who could participate in oral argument on the summary judgment motion—we reject the claim. Not only does the trial court have the discretion to decide a motion for summary judgment without a hearing, *see Lynn v. Lynn,* 617 A.2d 963, 968 n. 16 (D.C.1992) (citing Super. Ct. Civ. R. 12–I(f)), but also, on this record, we cannot discern how oral argument, whether by Mr. Maupin himself or by counsel, could have averted the entry of summary judgment.

Finally, Maupin argues that the Superior Court Clerk would not permit him to file his "Motion for Leave to File an Amended Opposition to the Motion for Summary Judgment" because "the sponsoring attorney was still designated as counsel of record." This argument is unavailing because Maupin has not shown how his proposed amended opposition would have cured the insufficiencies of his original opposition.