*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

**DISTRICT OF COLUMBIA COURT OF APPEALS**

No. 11-CV-614

DANIEL LOGAN, APPELLANT,

V.

LASALLE BANK NATIONAL ASSOCIATION, *et al.,* APPELLEES.

Appeal from the Superior Court
of the District of Columbia
(CAR-4955-09)

(Hon. Craig Iscoe, Trial Judge)

(Submitted November 2, 2012                    Decided December 12, 2013)

Daniel Logan, *pro se*.

*Michael A. Coogen, Jr.*, was on the brief for appellee.

Before FISHER and BLACKBURNE-RIGSBY, *Associate Judges*, and FARRELL, *Senior Judge*.

FISHER, *Associate Judge*:  Appellant Daniel Logan asks us to reverse the trial court's judgment dismissing eleven statutory and common law claims arising out of a non-judicial foreclosure on his home on July 29, 2009.  We affirm the dismissal of most counts, but reverse and remand for further proceedings on Counts One, Two, and Ten.

## I. Background

According to his complaint, appellant took out a loan from Paine Webber Mortgage Finance in the amount of $84,750 to purchase a home located at 5704 Georgia Avenue in Northwest Washington, D.C. The loan was secured by a purchase money deed of trust dated April 23, 1990. Paine Webber recorded the deed on May 1, 1990.[1]

Appellees — LaSalle Bank, National Association ["LaSalle Bank"] and Ocwen Loan Servicing, LLC ["Ocwen"] — claim that Logan was "substantially delinquent" in making payments on the loan by 2005, and in default by 2007. In his initial complaint filed on July 9, 2009, as well as in subsequent amendments on July 27, 2009, and thereafter, appellant insists that he was not in default, or at least did not owe as much as appellees claimed was due, that appellees imposed

---

[1] In their briefs, the parties agree that ownership of the loan changed hands — Logan tracing the loan's path from Paine Webber to the Department of Housing and Urban Development, which sold the loan to Berkeley Federal Bank on March 4, 2008, and appellees asserting that the promissory note was transferred to appellee LaSalle Bank, and then to appellee Ocwen for servicing on August 1, 1996. Appellant's complaint provides little in the way of specifics, alleging only that LaSalle Bank and Ocwen became "parties to a mortgage contract by way of assignment," although elsewhere he claims that neither entity had acquired an interest in the loan.

erroneous and fraudulent charges, and that any delinquency was due to LaSalle Bank's failure to correct the charges or to provide the necessary accounting to determine the outstanding debt.

Appellant filed for bankruptcy in 2008, which imposed an automatic stay on any foreclosure. By April 3, 2009, appellee Ocwen's request to lift the stay was granted, and LaSalle Bank scheduled a foreclosure sale for July 29, 2009. Bank of America, which had recently merged with LaSalle Bank, purchased the property at the foreclosure sale. On December 2, 2009, appellee Ocwen initiated a separate possessory action in the Landlord-Tenant Branch of the Superior Court which eventually resulted in Logan's eviction from the property in March 2011.

A series of filings by Logan, initially designed to prevent the foreclosure, culminated in the November 30, 2010, amended complaint currently before us. Appellant asserts a variety of claims based on federal and District of Columbia law, though all essentially allege that appellees failed to provide loan-related information and made erroneous and deceptive representations in assessing fees over the life of the loan.[2] Appellant also alleges that appellees did not have

---

[2] Appellant claimed that appellees' actions violated the following statutes: Count One — D.C. Consumer Protection Procedures Act (CPPA), D.C. Code § 28-

(continued…)

"standing" to foreclose upon his home. The complaint does not allege deception in the procurement, negotiation, or settlement of the loan, nor does it squarely confront appellees' assertion or the court's finding (in denying a temporary restraining order) that Logan had defaulted on the loan.

Appellees filed a motion to dismiss for failure to state a claim, or in the alternative for summary judgment. In April 2011, Superior Court Judge Craig Iscoe granted appellees' motion to dismiss all eleven of Logan's claims, noting Logan's failure to oppose the motion but nevertheless ruling on the merits, dismissing some claims as barred by the statute of limitations, some for lack of subject matter jurisdiction, and others for failure to state a claim upon which relief could be granted. This appeal followed.

---

(…continued)
3904 (2001); Count Two — Mortgage Lender and Broker Act (MLBA), D.C. Code § 26-1114 (2001, Supp. 2009); Count Three — Federal Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 (2000); Count Four — Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 (2000); Count Six — Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2605 (e) (2000); Counts Seven and Nine — Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962 (2000); and Count Eight — the Truth in Lending Act (TILA), 15 U.S.C. § 1638 (a)(5) and (a)(6) (2000). He also claimed breach of contract — Count Five — and fraud — Counts Ten and Eleven.

The convoluted procedural history of this case is further complicated by appellant's apparent difficulty in securing representation from his attorney of record throughout the course of the litigation, including on the day of the hearing on the motion to dismiss. As a result, appellant often filed documents and appeared *pro se*, and many of the filings, including his brief on appeal, are difficult to decipher. Nonetheless, the amended complaint at issue here was filed by appellant's attorney. Regrettably, his undisciplined approach to pleading makes our task unduly difficult.

## II. Analysis

We review *de novo* the trial court's dismissal of a complaint under Super. Ct. Civ. R. 12 (b)(6). *Chamberlain v. Am. Honda Fin. Corp.*, 931 A.2d 1018, 1022-23 (D.C. 2007). To withstand a Rule 12 (b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Potomac Dev. Corp. v. District of Columbia*, 28 A.3d 531, 544 (D.C. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Bare allegations of wrongdoing that "are no more than conclusions are not entitled to the assumption of truth," and are insufficient to sustain a complaint. *Id.* (quoting *Iqbal*, 556 U.S. at 679). "'[A] formulaic recitation of the elements of a cause of

action will not do . . . .'" *(Michael Patrick) Murray v. Motorola, Inc.*, 982 A.2d 764, 783 n.32 (D.C. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). However, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "[A] complaint should not be dismissed because a court does not believe that a plaintiff will prevail on [his] claim. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." *Grayson v. AT&T Corp.*, 15 A.3d 219, 229 (D.C. 2011) (en banc) (internal quotation marks omitted).

A plaintiff's burden is much greater in defending against a summary judgment motion. Once the defendant has made a sufficient evidentiary showing to support the motion, the plaintiff's "response, by affidavits or as otherwise provided in this Rule, must set forth specific facts showing that there is a genuine issue for trial." Super. Ct. Civ. R. 56 (e). "[A] plaintiff's mere unsworn statement of material facts, . . . general pleadings or a denial" are insufficient to defend against a summary judgment motion supported by affidavits, depositions, or other evidence; "rather [the plaintiff] must respond similarly by [providing] material facts under oath which raise genuine issues of fact for trial." *Maupin v. Haylock*, 931 A.2d 1039, 1042 (D.C. 2007) (internal quotation marks and citations omitted).

## A. Statute of Limitations

The trial court dismissed several of appellant's claims on statute of limitations grounds.[3] We affirm the judgment on these grounds only as to appellant's TILA claim (Count Eight).

Ordinarily, the statute of limitations begins to run when the injury occurs, whether the plaintiff knows the full scope of misconduct or not, so long as he had at least "inquiry notice that []he might have suffered an actionable injury." *Medhin v. Hailu*, 26 A.3d 307, 310 (D.C. 2011) (internal quotation marks omitted). Generally, the statute of limitations is invoked as an affirmative defense, and the defendant bears the burden of showing that a claim is time-barred.[4] *See Brin v.*

---

[3] The trial court dismissed the following claims on statute of limitations grounds: Count One (CPPA), Count Two (MLBA) (in the alternative), Count Three (FDCPA), Count Four (FCRA) (in the alternative), Count Five (contractual claims) (in the alternative), and Count Eight (TILA).

[4] Despite appellees' assertion that the amended complaint is untimely because it was not filed until November 30, 2010, appellant raised essentially the same claims in his first complaint filed on July 9, 2009 (including RESPA, TILA, FDCPA, CPPA, and wrongful foreclosure claims). Neither the parties nor the trial court addressed the issue, but for present purposes we will assume that the current complaint relates back to the original, *see* Super. Ct. Civ. R. 15 (c)(2), and that those claims that were timely on July 9, 2009, remained so on November 30, 2010.

*S.E.W. Investors*, 902 A.2d 784, 800-01 (D.C. 2006). At the Rule 12 (b)(6) stage, a court should not dismiss on statute of limitations grounds unless the claim is time-barred on the face of the complaint. *Id*.; *Oparaugo v. Watts*, 884 A.2d 63, 73 (D.C. 2005). However, "[o]n [a] defendant's [properly supported] motion for summary judgment on the basis of the statute of limitations, it is the plaintiff who then bears the burden of pointing to specific facts of record that would justify the factfinder in concluding that the suit is timely . . . ." *Maupin*, 931 A.2d at 1042 (internal quotation marks omitted) (second alteration in original).

## 1. Count Eight:  Truth in Lending Act (TILA)

Violations of TILA, which arise from the original loan transaction, have a statute of limitations of one year. 15 U.S.C. § 1640 (e) (2000); *see Youkelsone v. FDIC*, 910 F. Supp. 2d 213, 225 (D.D.C. 2012) ("In this circuit, violation of TILA occurs no later than the date of settlement of [the] loan . . . ." (quoting *Lawson v. Nationwide Mortg. Corp.*, 628 F. Supp. 804, 807 (D.D.C. 1986) (citing, *inter alia*, *Postow v. OBA Fed. Sav. & Loan Ass'n*, 627 F.2d 1370, 1380 (D.C. Cir. 1980))) (alteration in original). Because the loan transaction occurred in 1990, appellant's TILA claim necessarily falls outside the limitations period, and was properly dismissed.

## 2. Other Counts

The rest of appellant's claims present a murkier picture. There are a number of complex statute of limitations issues that the parties and the trial court did not address, including: whether any repeated injury alleged by appellant occurred within the statute of limitations, whether tolling applied to any of his claims, and the effect of various dismissals of the complaint on the running of the statute.

We may safely say that claims based on origination and settlement of the loan in 1990 are barred by the statute of limitations. However, appellant's principal claims seem to center upon problems related to servicing the loan in the period leading up to the foreclosure, the 2009 foreclosure itself, and a failure to properly account for any money due to or owed by appellant stemming from that foreclosure. From the face of the complaint, we cannot exclude the possibility that some portions of the remaining claims survive the statute of limitations defense. Nor have appellees borne their burden, for purposes of a motion for summary judgment, to adduce evidence that would demonstrate that the claims fall outside the applicable limitations periods. Because the record before us leaves these

questions unresolved, we consider whether appellant's claims may be dismissed on alternative grounds.

## B.  Sufficiency of Allegations to State a Claim

After scrutinizing the entirety of the complaint, and granting appellant every inference to which his allegations are entitled, we hold that several of the counts in appellant's complaint must be dismissed for failure to state a claim.  In some instances, this was not the basis for the trial court's ruling, but we "may affirm a judgment on any valid ground, even if that ground was not relied upon by the trial judge or raised or considered in the trial court," so long as doing so would not be procedurally unfair.  *Pietrangelo v. Wilmer Cutler Pickering Hale & Dorr, LLP*, 68 A.3d 697, 711 n.10 (D.C. 2013); *accord*, *Nat'l Ass'n of Postmasters v. Hyatt Regency Washington*, 894 A.2d 471, 474 (D.C. 2006).

### 1.  Count Three:  Federal Fair Debt Collection Practices Act (FDCPA)

In the section of the complaint addressing FDCPA claims, appellant refers to LaSalle Bank's allegedly "false[,] deceptive and misleading representations" about the amount of debt owed and its legal right to foreclose.  Although appellant's allegations regarding Ocwen's phone calls seeking to collect from appellant might

otherwise be cognizable under the FDCPA,[5] he has not pleaded sufficient facts to show that either LaSalle Bank or Ocwen is a "debt collector" as defined by the FDCPA.

The Act does not apply to all persons who attempt to collect payments on outstanding debt. Only those entities whose interest in the debt was acquired when the debt was in default are "debt collectors" for purposes of the FDCPA. 15 U.S.C. § 1692a (6) (F) (iii) (FDCPA does not apply if debt was "not in default at the time it was obtained"). By contrast, a party who acquires a stake in a debt prior to default is a "creditor," and not a "debt collector" for purposes of the Act. *See* 15 U.S.C. § 1692a (4); *see also Ruth v. Triumph P'ships*, 577 F.3d 790, 796-97 (7th Cir. 2009) (status as debt collector depended on acquisition of debt after default,

---

[5] Appellant claims that "[w]henever payment was not received on time, Ocwen's representative would bombard the Plaintiff's phone line and answering service with messages. Calls would start from 6:30 am . . . to 11 pm . . . . This would be on a daily basis including Sundays." Such conduct by a debt collector would constitute a violation of 15 U.S.C. § 1692c (a)(1) ("Without the prior consent of the consumer given directly to the debt collector or the express permission of a court of competent jurisdiction, a debt collector may not communicate with a consumer in connection with the collection of any debt — (1) at any unusual time or place or a time or place known or which should be known to be inconvenient to the consumer. In the absence of knowledge of circumstances to the contrary, a debt collector shall assume that the convenient time for communicating with a consumer is after 8 o'clock antemeridian and before 9 o'clock postmeridian, local time at the consumer's location.").

although status as creditor and debt collector not mutually exclusive where debt collected for entity's own benefit); *FTC v. Check Investors, Inc.*, 502 F.3d 159, 172-73 (3d Cir. 2007) (same).

The complaint includes no facts explaining Ocwen's relationship to LaSalle, when either entity acquired an interest in the loan, the nature of that interest, or whether appellant was in default when it did so.[6] As a result, appellant has not pleaded sufficient facts to support an inference regarding appellees' status as debt collectors under the Act. *See Antoine v. U.S. Bank Nat. Ass'n*, 547 F. Supp. 2d 30, 37 n.2 (D.D.C. 2008) ("While [an FDCPA] claim does not require particularized pleading, it does require, at a minimum, that the plaintiff identify the defendant

---

[6] The record does not establish the status of the debt at the time it was acquired by Ocwen. Ocwen claims it began servicing the loan in 1996, a representation supported by its April 2009 letter in response to appellant's request for information about the loan. However, we do not consider such information in examining the sufficiency of the complaint. *See Grayson,* 15 A.3d at 263 ("At this early pleading stage, we are bound to assess the viability of Breakman's claim under Rule 12 (b)(6) within the four corners of the complaint . . . ."); *Washkoviak v. Student Loan Mktg. Ass'n,* 900 A.2d 168, 177 (D.C. 2006) ("'[A] defendant raising a 12 (b)(6) defense cannot assert any facts which do not appear on the face of the complaint itself.'" (quoting *Carey v. Edgewood Mgmt. Corp.*, 754 A.2d 951, 954 (D.C. 2000)). Although the court presiding over the possessory action found that appellant was in default at the time of its 2009 entry of judgment for possession, it did not specify when appellant initially defaulted. For his part, appellant maintains that he was not in default on the loan or, alternatively, that he does not owe the amount appellees claimed was due.

individually, in the complaint, as a 'debt collector,' beyond mere conclusory allegation."); *contrast Bourff v. Rubin Lublin, LLC*, 674 F.3d 1238, 1241 (11th Cir. 2012) (servicer was "debt collector" under FDCPA where plaintiff alleged that servicer "received an assignment of the security deed and debt . . . while the Plaintiff's loan was in default, for the purpose of facilitating collection of such debt for another, presently unknown, entity") (internal quotation marks omitted). Accordingly, appellant's FDCPA claim is properly dismissed under Rule 12 (b)(6).

### 2. Count 4: Federal Credit Reporting Act (FCRA)

Appellant does not claim, as required under the FCRA, that he reported his dispute to a "consumer reporting agency,"[7] which would then notify Ocwen to investigate the disputed information. 15 U.S.C. § 1681i (2000). Such action

---

[7] The FCRA provides :

> The term "consumer reporting agency" means any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

15 U.S.C. § 1681a (f).

would have been necessary to trigger Ocwen's duties under the FCRA; without it, appellant can make no viable FCRA claim. *Id.*; *see also Phrasavang v. Deutsche Bank*, 656 F. Supp. 2d 196, 203-04 (D.D.C. 2009) ("To prevail on a FCRA claim under 15 U.S.C. § 1681s-2(b), a plaintiff must [notify] the [consumer reporting] agency directly of disputed credit information, and that agency in turn must provide notice to the furnisher of the plaintiff's credit information, which is then obligated to conduct an investigation into the dispute.") (internal quotation marks omitted) (citing *Nelson v. Chase Manhattan Mortg. Corp.*, 282 F.3d 1057, 1060 (9th Cir. 2002)). We therefore affirm the trial court's dismissal of this count.

### 3. Count Six: Real Estate Settlement Procedures Act (RESPA)

Despite the name of the act, the obligations imposed by RESPA do not end when the mortgage transaction is settled. RESPA requires loan servicers to provide certain information regarding a debt upon receipt of a qualified written request (QWR). *See* 24 C.F.R. § 3500.21 (e)(2)(ii) (requiring loan servicer to respond to QWRs until "the mortgage servicing loan amount is paid in full," or, if the original servicer has transferred the loan, requiring the original servicer to respond within one year of the transfer).

Appellant claims that Ocwen failed to respond to his QWRs and failed to correct "erroneous loan history information" regarding his account, contrary to RESPA requirements. Although RESPA covers such conduct, dismissal of this claim was nonetheless proper because appellant failed to plead with particularity actual damages caused by Ocwen's failure to respond, 12 U.S.C. § 2605 (f)(1)(A), or "a pattern or practice of noncompliance with the requirements of" RESPA, 12 U.S.C. § 2605 (f)(1)(B), as the statute requires. *See Hintz v. JPMorgan Chase Bank, N.A.*, 686 F.3d 505, 510-11 (8th Cir. 2012) (RESPA claim properly dismissed where plaintiff failed to plead actual damages with particularity, causation, or a pattern or practice of violations).

The complaint characterizes the erroneous information as "ruinous," but does not explain how or why, concluding without demonstrating that he "has suffered damages to an extend [sic] and in an amount reserved for determination at trial." Appellant notes, "A quick search on the internet has unearthed many complaints, class actions and individual lawsuits against [appellants]," and "[i]n 2006 there were over 500 lawsuits filed against [appellants]" under RESPA, among other statutes. These statements do not adequately plead a pattern of violations for which the court could award damages under the statute. Count Six therefore is properly dismissed for failure to state a claim under RESPA.

### 4. Counts Seven and Nine: Racketeering Influenced and Corrupt Organizations Act (RICO)

Counts Seven and Nine of the complaint purport to allege civil RICO violations. *See* 18 U.S.C. § 1964 (2000) (civil remedies). The trial court dismissed these claims for lack of subject matter jurisdiction, stating that the Article III federal courts have exclusive jurisdiction. Dismissal on these grounds was error. *See Tafflin v. Levitt*, 493 U.S. 455 (1990) (state and federal courts have concurrent jurisdiction over civil RICO claims).

We nonetheless conclude that dismissal was proper because appellant failed to allege sufficient facts to state a viable civil RICO claim. *See (Winston) Murray v. Wells Fargo Home Mortg.*, 953 A.2d 308, 323 (D.C. 2008) (citing *Obelisk Corp. v. Riggs Nat'l Bank*, 668 A.2d 847, 852 (D.C. 1995) (appellate court may affirm judgment on alternative grounds)). Because appellees raised this argument in their motion to dismiss, appellant would suffer no procedural unfairness due to dismissal for failure to state a claim rather than for lack of subject matter jurisdiction.

Appellant provides nothing beyond a bare recitation of the statutory requirements of a RICO claim, alleging no specific facts regarding either the predicate crimes cited (wire fraud and mail fraud), or a pattern of racketeering activity, as required under 18 U.S.C. § 1962 (A) and (C), and as defined in 18 U.S.C. § 1961 (1) and (5), respectively. *Cf., e.g.*, *Stansel v. Am. Sec. Bank*, 547 A.2d 990, 993-94 (D.C. 1988) (insufficient proof to present RICO claim to jury where plaintiff failed to present evidence to establish predicate crimes or a pattern of racketeering activity). These counts fall short of our pleading requirements and are properly dismissed pursuant to Rule 12 (b)(6).

### 5. Count Five: Contractual Claims

Count Five alleges breach of contract and breach of the duty of good faith and fair dealing as to both appellees. The trial court dismissed appellant's contractual claims on statute of limitations grounds, which we discuss above, as well as for failure to state a claim, noting that the "complaint fails to allege what contractual provision it believes was breached."

"To prevail on a claim of breach of contract, a party must establish (1) a valid contract between the parties; (2) an obligation or duty arising out of the

contract; (3) a breach of that duty; and (4) damages caused by breach." *Tsintolas Realty Co. v. Mendez*, 984 A.2d 181, 187 (D.C. 2009). Appellant does not point to which contractual provisions either appellee breached "through its false accountants [sic], failure to time the credit payments and other actions." Appellant alleges that appellees' "actions are [a] material breach between the parties and they render the Plaintiff's duties and obligations under the contract void." However, he identifies neither a governing contractual provision, nor an action or omission constituting a material breach that would have relieved him of his duties to perform. Such a pleading is not sufficient to place appellees on notice of the claims against them, making dismissal under Rule 12 (b)(6) proper. *Keranen v. Nat'l R.R. Passenger Corp.*, 743 A.2d 703, 713 (D.C. 2000).

### 6. "Fraud" Claims

Although appellant styles Counts Ten and Eleven as claims of fraud and lack of standing, in substance they are wrongful foreclosure claims. *See Diaby v. Bierman*, 795 F. Supp. 2d 108, 11 n.3 (D.D.C. 2011) (construing claim regarding lack of standing to foreclose as one of wrongful foreclosure). We consider each in turn.

### a. Count Eleven: "Robo-Signed" Notice of Foreclosure

Appellant claims that the signature of appellees' representative on the notice of foreclosure was "robo-signed," rendering the notice defective, and by implication, invalidating the foreclosure sale. Appellant does not adduce any facts to support this conclusion.

Although we have insisted upon strict enforcement of the formal requirements for a notice of foreclosure [8] where the defects impacted a homeowner's ability to contest or prevent foreclosure, [9] we have declined to invalidate a foreclosure sale for defects in a notice that are merely technical or *de minimis*. [10]

---

[8] *See* D.C. Code § 42-815 (b) (2001) (amended 2011); 9 DCMR. 3100.2 (2009).

[9] *See Bank-Fund Staff Fed. Credit Union v. Cuellar*, 639 A.2d 561, 569 (D.C. 1994) (failure to include cure amount in notice of foreclosure invalidated foreclosure); *Independence Fed. Sav. Bank v. Huntley*, 573 A.2d 787, 787-88 (D.C. 1990) (invalidating foreclosure by strictly enforcing statutory requirement of full 30-day notice although homeowner acknowledged having received actual notice).

[10] *See Hattie E. Rose ex rel. Estate of James Rose v. Wells Fargo Bank, N.A., ex rel. Option One Mortg. Loan Trust 1999-B Asset Backed Certificates*, 73 A.3d 1047, 1051 (D.C. 2013) (use of holder's agent's address on notice of foreclosure did not invalidate sale where notice "provided [the homeowner] with the information she needed to take steps to prevent the foreclosure or contact the person handling the foreclosure on Wells Fargo's behalf, while avoiding any misleading impression"); *cf. Gore v. Newsome*, 614 A.2d 40, 43-44 (D.C. 1992)

(continued…)

Even if we overlook appellant's failure to plead factual support for his claim, we see no basis upon which to invalidate the foreclosure sale. Appellant "does not explain what 'robo-signing' is or why it renders the [notice of foreclosure] fraudulent, let alone include factual content indicating" why he believes the foreclosure had not been authorized by LaSalle. *Toone v. Wells Fargo Bank, N.A.*, 716 F.3d 516, 521 (10th Cir. 2013) (noting that "[n]umerous courts have held that bald allegations of 'robo-signing' do not suffice under the [pleading] standard set by *Iqbal*"). There is no indication that the notice failed to provide appellant with the information necessary to challenge the foreclosure. *Cf. Conlin v. Mortg. Elec. Registration Sys.*, 714 F.3d 355, 362 (6th Cir. 2013) (wrongful foreclosure claim based on allegedly robo-signed notice of foreclosure properly dismissed where claimant failed to allege prejudice). Dismissal of appellant's claim was therefore proper under Rule 12 (b)(6).

### b.  Count Ten:  LaSalle Bank's Status as Holder of the Note

---

(…continued)
(taking care "to eschew overzealous application of the strict compliance rule" and holding notice of tax sale sufficient where abbreviation of homeowners' names did not "affect[] the accuracy of the notice or create[] a substantial risk that a record owner [would have] erroneously believe[d] the notice was intended for someone else").

It is more difficult to resolve appellant's claim that appellees were not legally entitled to foreclose because LaSalle Bank was "not in legal possession of the note and thus [appellees] have no evidence of the debt." The trial court dismissed this count for failure to state a claim, or alternatively on summary judgment grounds, without elaborating its reasoning. Because the record leaves many legal and factual questions unanswered, we remand this count for further consideration.

Appellant sufficiently raised this claim in his complaint by demonstrating that the note and deed of trust list only Paine Webber and the original trustees, while the notice of foreclosure lists a different holder and different trustees. LaSalle's status as holder of the note is certainly relevant to appellees' authority to institute non-judicial foreclosure proceedings. *See* D.C. Code § 42-815 (b) (2001) (providing that, "[i]n the case of a residential mortgage, . . . a foreclosure sale under a power of sale provision contained in any deed of trust, mortgage, or other security instrument, shall not take place unless the holder of the note secured by the deed of trust, mortgage, or security instrument, or its agent, shall" adhere to certain statutory requirements); 9 DCMR § 3100.01 (same). Indeed, appellees recognize the importance of this question in their motion to dismiss by attaching a

document claiming authority to appoint the substitute trustees who initiated the foreclosure action: "[T]he aforesaid deed of trust provides that the holder of the Note secured thereby may remove the Trustees and appoint successor trustees . . . ."

Appellees supported their motion for summary judgment with an affidavit claiming that the note had been "endorsed in blank"[11] and that Ocwen delivered the note into the possession of appellees' law firm. Appellees argue that Ocwen's possession of the note demonstrates that ownership had passed from Paine Webber, and that summary judgment should be granted on the claim that they did not have authority to foreclose. Appellant never responded to appellees' affidavit, but we conclude that further factual development and legal analysis are necessary.

---

[11] The bottom of the promissory note includes the text, "WITHOUT RECOURSE PAY TO THE ORDER OF" above a signature line for Paine Webber Mortgage Finance, Inc. Under this block appears the signature of Kathleen D. Will, Vice President. Below this block, there is text that states, "All right, title & interest to the within credit instrument is hereby assigned to the U.S. Secretary of Housing & Urban Development, Washington, D.C., his successors & assigns." Thereunder is a blank line, and beneath it, "Secretary Housing & Urban Development, PaineWebber Mortgage Finance, Inc." Finally, beneath this text, there is another signature block signed by Bonnie Griffith, Assistant Vice-President.

Appellees' affidavit and supporting documents are insufficient to demonstrate the absence of a genuine issue of material fact. The record before us, and the legal arguments presented, do not demonstrate that appellees were assigned Paine Webber's interest in the mortgage, thus allowing them to replace the original trustees and foreclose upon appellant. Neither party has explained, nor did the trial court consider, the relevance of the note's language, or the form of endorsement and signature blocks, to whether LaSalle could initiate foreclosure. Nor did the parties or the trial court consider what preclusive effect, if any, the judgment in the prior possessory action had on appellant's wrongful foreclosure claim in the complaint before us. We therefore remand this count to the trial court for further consideration.

## 7. Count Two: Mortgage Lender and Broker Act (MLBA)

The trial court dismissed appellant's MLBA claim because it was "a mere recitation of the very barest elements of the claim." This may be true of the nine numbered paragraphs that appear directly below the label "Count Two," but appellant also incorporated by reference the allegations contained in thirty-four previous paragraphs. These allegations regarding repeated assessment of improper fees and failure to provide information on indebtedness make out a claim under the

MLBA. The Act applies to both lenders and servicers, D.C. Code § 26-1101 (11) (ii), (iii) (2001), and prohibits them from, among other things, "defraud[ing] or mislead[ing] borrowers," engaging in "unfair or deceptive practice[s]," "fail[ing] to make disclosures as required by . . . any applicable federal or District law," and "fail[ing] to truthfully account for monies belonging to a party to a residential mortgage loan transaction[.]" D.C. Code § 26-1114 (d)(1), (2), (7), (14) (2001). Although the Act provides an exemption for a financial institution that "accepts deposits and is regulated under Title 26" of the D.C. Code, we cannot tell from the record whether this exemption would apply to LaSalle or Ocwen.

Judge Iscoe noted a potential statute of limitations problem with this count of the complaint, and any claims based on the mortgage transaction itself certainly are barred by the three-year statute. *See* D.C. Code § 12-301(8) (2001) (three-year residual statute of limitations applies where no other limitation period specified). But, as discussed above, we cannot say with confidence that all of appellant's MLBA claims would fall outside the limitations period. Judge Iscoe also stated, without further elaboration, "that these issues have been substantively addressed in other matters that have been pending before other courts." As noted below, the court and the parties are free to explore on remand the topics of issue and claim preclusion.

## 8. Count One:  District of Columbia Consumer Protection Procedures Act (CPPA)

Finally, we address appellant's allegations of unlawful trade practices — specifically, violations of D.C. Code § 28-3904 (e), which prohibits "mispresent[ation] as to a material fact which has a tendency to mislead," and D.C. Code § 28-3904 (f), which forbids the "fail[ure] to state a material fact if such failure tends to mislead."[12]  The trial court dismissed this count on statute of limitations grounds, but we cannot agree, for the reasons outlined above.

Appellant alleges that appellees repeatedly assessed fees to which they were not entitled, failed to credit payments, and refused to provide information either to justify the fees or to correct any errors, in an effort to mislead appellant about his

---

[12] Appellant also includes a claim under D.C. Code § 28-3904 (q), for "fail[ure] to supply to a consumer a copy of a . . . promissory note, trust agreement or other evidence of indebtedness which the consumer may execute."  However, appellant makes no claim regarding Paine Webber's failure to provide proof of indebtedness at the time of the execution of the agreement, nor has he made any showing as to why such a claim would be timely some nineteen years after the execution of the agreement.  Moreover, he has not explained why such a claim would apply to appellee LaSalle Bank or appellee Ocwen.

indebtedness.[13] Appellant also asserts that these representations caused appellees to state that appellant owed more than he did. Indeed, he insists that he "is not in default under the terms of the promissory note and deed of trust," and that LaSalle's allegations to the contrary led to wrongful foreclosure upon his residence.

Appellant frames his claim as against both appellees, but alleges facts that relate only to the servicing of the loan. We have recognized that the CPPA applies to real estate mortgage transactions, *see Gomez v. Independence Mgmt. of Delaware, Inc.*, 967 A.2d 1276, 1287 n.12 (D.C. 2009) (discussing amendment of statute to include real estate transactions), and to mortgage refinancing, *see DeBerry v. First Gov't Mortg. & Investors Corp.*, 743 A.2d 699 (D.C. 1999). The CPPA also applies to deceptive billing practices related to a contract for consumer goods and services. *See District Cablevision Ltd. P'ship v. Bassin*, 828 A.2d 714, 723 (D.C. 2003) (noting enumerated violations of CPPA are not exclusive of trade practices that violate other laws).

---

[13] In contrast to appellant's RESPA claim, which we dismiss for insufficient pleading, we have not required that damages be pleaded with particularity under the CPPA, but only that some cognizable injury be alleged to ensure standing in CPPA actions in the Superior Court. *See Grayson*, 15 A.3d at 243-44; *cf. Saucier v. Countrywide Home Loans*, 64 A.3d 428, 442 (D.C. 2013) (CPPA pleading standard meant to reduce burden of particularlized pleading required for alleging misrepresentation in action for common law fraud).

However, at least one court has held that a homeowner fighting foreclosure did not allege the existence of a consumer-merchant relationship between himself and the servicer of the mortgage loan. *See Busby v. Capital One, N.A.*, 772 F. Supp. 2d 268, 280 (D.D.C. 2011) (dismissing CPPA claim where plaintiff failed to establish servicer was merchant, noting "[a]lthough the plaintiff notes that the CPPA applies to lenders in residential mortgage transactions, . . . the plaintiff has alleged here that Capital One was not the lender and that its role in the lender-borrower relationship was limited to serving as the loan servicer, at best . . . ."). We have not decided whether the CPPA applies to the trade practices of a mortgage loan servicer, and we are not prepared to do so without further elucidation by the trial court and the parties.[14] Accordingly, we remand this count as well.

---

[14] In their arguments before the trial court, appellees apparently mistook the CPPA for the Consumer Protection Act (CPA), which has monetary limits of $25,000 related to real estate credit transactions. D.C. Code § 28-3901 (2001); *see (Winston) Murray*, 953 A.2d at 323 n.6 & 323 ("[T]he coverage of the Consumer Protection Procedures Act is much broader than that of the Consumer Protection Act. . . . The coverage of the D.C. Consumer Protection Act is limited by its terms to actions pertaining to consumer credit sales or direct installment loans.")

## III.  Conclusion

We affirm the trial court's dismissal of all claims except portions of those alleged in Counts One, Two, and Ten.  While we by no means foreclose the possibility that these counts may be resolved short of trial — whether upon a proper showing that they are time-barred, as precluded by the prior judgment in the action for possession, or upon a properly supported motion for summary judgment — further consideration is due.  We therefore remand the surviving claims for further proceedings consistent with this opinion.[15]

*It is so ordered.*

---

[15] Insofar as appellant believes his attorney failed him, his remedy is to sue his attorney for malpractice in a separate action.  *Goldschmidt v. Paley Rothman Goldstein Rosenberg & Cooper, Chartered*, 935 A.2d 362, 370 (D.C. 2007) ("Except in extraordinary circumstances (not demonstrated here), if an attorney's conduct falls substantially below what is reasonable under the circumstances, the client's remedy is against the attorney in a suit for malpractice.") (internal quotation marks omitted).  Nor may appellant seek an advantage in the present litigation by claiming that his opponents' counsel was guilty of professional misconduct.  *See* D.C. R. Prof. Conduct, Scope [4] ("[N]othing in the Rules or associated Comments or this Scope section is intended to confer rights on an adversary of a lawyer to enforce the Rules in a proceeding other than a disciplinary proceeding.").