*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 13-CV-1025

DENNIS T. COMER, APPELLANT,

v.

WELLS FARGO BANK, N.A., APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(CAR-4452-11)

(Hon. Ramsey Johnson, Trial Judge)

(Submitted June 6, 2014                    Decided January 29, 2015)

*Johnnie D. Bond, Jr.* was on the brief, for appellant.

*Mary C. Zinsner*, *Billy B. Ruhling, II*, and *S. Mohsin Reza* were on the brief, for appellee.

Before FISHER and BLACKBURNE-RIGSBY, *Associate Judges*, and KING, *Senior Judge*.

Opinion for the court by *Associate Judge* BLACKBURNE-RIGSBY.

Opinion by *Associate Judge* FISHER, concurring in part and dissenting in part, at page 27.

BLACKBURNE-RIGSBY, *Associate Judge*:     Appellant Dennis T. Comer

appeals the trial court's omnibus order partially granting appellee Wells Fargo

Bank's ("Wells Fargo") motion to dismiss several of appellant's claims raised in an amended complaint under Super. Ct. Civ. R. 12 (b)(6) for failure to state a claim. On appeal, appellant argues that the trial court erred by dismissing his District of Columbia Consumer Protection Procedures Act ("CPPA"), negligent misrepresentation, and Fair Housing Act ("FHA") claims as time-barred because these amended claims "relate back" to the original timely complaint, given that they "arose out of the conduct, transaction, or occurrence" set forth therein. Appellant additionally contends that the trial court erred by dismissing his wrongful foreclosure claim on the basis that he suffered no harm or prejudice as the result of an alleged inaccuracy in the foreclosure notice provided to him by Wells Fargo.[1] We affirm the dismissal of the FHA and wrongful foreclosure counts, but reverse and remand for further proceedings on the CPPA and negligent misrepresentation claims.

---

[1] Appellant filed his CPPA claim under the D.C. Consumer Protection Procedures Act, D.C. Code § 28-3904 (2007 Supp.), alleging that Wells Fargo's conduct "misrepresent[ed] as to a material fact which ha[d] a tendency to mislead," in violation of § 28-3904 (e), and "fail[ed] to state a material fact [and these] failure[s] tend[ed] to mislead," in violation of § 28-3904 (f). He filed his FHA claim under the Fair Housing Act, 42 U.S.C. §§ 3604, 3605 (2006). The negligent misrepresentation and wrongful foreclosure claims are common law claims.

## I.     Factual Background

Appellant sought funding from Wells Fargo in 2007–2008 to finance the purchase and renovation of a home located at 107 Rhode Island Avenue, Northwest, Washington, D.C. ("Property").  Appellant applied and was approved for a 203(k) Rehabilitation Mortgage Insurance Loan under the National Housing Act, 12 U.S.C. § 1709 (2006), executing a loan agreement on June 11, 2008 that included approximately $337,000 for the purchase of the Property and $427,925 for renovations to the Property, with the latter amount held in escrow.  During the application process, appellant worked with a Wells Fargo Renovation Loan Specialist named Jason Roche, whom Wells Fargo had assigned to work on appellant's loan application.  Appellant's interactions with Mr. Roche and the services provided by him would form the basis for much of the ensuing protracted litigation.  Appellant eventually defaulted on the loan, and Wells Fargo foreclosed on the Property on January 12, 2010.

### A. The Original Complaint

On June 7, 2011, appellant filed his first complaint in the Superior Court of the District of Columbia ("original complaint").[2] The underlying facts of the original complaint outlined the United States Department of Housing and Urban Development's ("HUD") requirements for a 203(k) loan and detailed allegations of Wells Fargo's negligence and incompetence in its handling of appellant's loan, including violations of HUD requirements.[3] Specifically, appellant claimed that Wells Fargo violated HUD's requirement that lenders "strictly observe FHA underwriting guidelines when approving 203(k) loan applications."[4] According to

---

[2] Prior to the Superior Court litigation, appellant filed a complaint in the United States District Court for the District of Columbia on January 11, 2010. On May 20, 2011, that court dismissed appellant's complaint, without prejudice, for lack of subject matter jurisdiction.

[3] Specifically, appellant contended that Wells Fargo knew or should have known that the 203(k) loan program was subject to disproportionate levels of borrower default. With regard to Mr. Roche, appellant claimed that: (1) he failed to give appellant sufficiently detailed information about the loan; (2) he knew very little about the renovation mortgage process and failed to present appellant with alternative financing options; and (3) he gave appellant incorrect information concerning the repayment timeline — all in order to obtain higher commissions and fees.

[4] Appellant argues that overstating a borrower's income and relying on high debt-to-income ratios when approving 203(k) loans is an example of a violation of this requirement, and alleges that Wells Fargo's "number maneuvering" in reference to his income and debt-to-income ratio was such a violation.

appellant, Wells Fargo failed to "provide [him with] complete, detailed information about the requirements and complexity of [the loan]," advised him to take out a loan that was larger than necessary to purchase and renovate the Property, and manipulated his reported income to approve him for a higher loan amount. According to appellant, he relied solely" on Wells Fargo and its agent, Mr. Roche, "for clear advice about how to obtain a loan to purchase and renovate a property[,]" and that due to Wells Fargo's and Mr. Roche's misleading tactics and "blatant disregard to its duty" to properly advise appellant about the risks of taking on such a loan, appellant agreed to accept the loan he was issued. Appellant incorporated this factual basis by reference at the beginning of each of his seven alleged counts.[5]

As to the specific counts, appellant's original complaint alleged, *inter alia*, that Wells Fargo violated the CPPA and made negligent misrepresentations through its agent, Mr. Roche, regarding "material facts which had a tendency to mislead." With regard to the CPPA claim, appellant argued that Mr. Roche violated the Act by representing that appellant would not have to make any

---

[5] Appellant named three other defendants in his original complaint who are not parties nor relevant to this appeal. Additionally, four of appellant's original claims were dismissed with prejudice by oral order on February 10, 2012 and are not on appeal.

mortgage payments on the loan during the first six months while renovating the Property, yet appellant received a request for payment within forty-five days after closing. Appellant further alleged that Wells Fargo forged his signature on a Truth-In-Lending Disclosure form. This conduct, according to appellant, amounted to "unfair and deceptive trade practices" in violation of the CPPA. With regard to the negligent misrepresentation claim, appellant repeated many of the allegations raised in the CPPA claim, including that Mr. Roche made misrepresentations regarding mortgage payments and that appellant's signature had been forged on the Truth-In-Lending Disclosure form.

Appellant also alleged wrongful foreclosure for Wells Fargo's failure to provide the correct balance due on the notice of foreclosure form, which, in addition to causing a foreclosure based on an incorrect balance, affected appellant's credit report. The notice stated the balance due as "$768,776.20, plus accrued attorney fees, costs, and other sums which may accrue prior to sale." Rather, appellant provided a cost breakdown to allege that the balance due should have been $547,902.08, and therefore that the amount provided in Wells Fargo's notice incorrectly included $220,874.12, comprised of unused funds held in an escrow account for renovations plus a smaller contingency fee for certain

contractor costs, thereby rendering the notice defective and resulting in wrongful foreclosure of the Property.[6]

## B. The Amended Complaint

Wells Fargo filed a motion to dismiss appellant's original complaint for failure to state a claim, and appellant responded by filing a motion to amend the original complaint. Wells Fargo opposed the amendment, arguing that appellant's new and amended claims were futile and time-barred by the relevant statutes of limitations.[7] Nonetheless, the trial court granted appellant's motion to amend, and on December 20, 2011, appellant filed his amended complaint, mostly bringing the same allegations set forth in the original complaint with regard to each count.

---

[6] Specifically, appellant estimates that he spent "roughly $207,050" of the funds held in the escrow account on renovations. As a result, there remained an unused $207,050 in the escrow account, which Wells Fargo controlled, to be drawn down for contractor work performed and approved by Wells Fargo. Appellant contends that this amount, plus a ten percent contingency fee to cover certain contractor costs in the amount of $21,731.70, should have been deducted from the balance due.

[7] Under D.C. Code § 12-301 (2001), if a party fails to bring forth a claim within a certain period from the time the right to maintain the action accrues, the claim is barred as a matter of law. Claims for CPPA violations and negligent misrepresentation carry a statute of limitations of three years. D.C. Code §12-301 (8) (2001) (setting the statute of limitations for claims "for which a limitation is not otherwise specially prescribed" at three years). The statute of limitations for FHA claims is two years. 42 U.S.C. § 3613 (a) (2012).

Some of the facts in the amended complaint mirrored those in the original complaint, including appellant's contention that Wells Fargo and Mr. Roche negligently handled his loan, improperly advised him, and made certain misrepresentations to him on which he relied to his detriment when taking on the 203(k) loan. However, the amended complaint set forth a new factual basis, namely, that Wells Fargo "engaged in a pattern or practice of illegal and discriminatory mortgage lending," which appellant incorporated into each claim. Appellant specifically alleged that Wells Fargo implemented "a pattern and practice of targeting African Americans . . . for deceptive, predatory or otherwise unfair mortgage lending practices." The alleged purpose of these practices was to maximize Wells Fargo's short-term profit by providing loans to African Americans that they could not afford.[8]

---

[8] Among the troubling predatory lending practices appellant claimed Wells Fargo engaged in was "reverse redlining," whereby Wells Fargo targeted "minority consumers for credit on higher, more harmful terms than [those] . . . charged to similarly situated majority consumers." To support these contentions, appellant cited reports and declarations by former employees of Wells Fargo alleging discriminatory lending practices targeting African Americans in separate unrelated incidents in other U.S. cities. In addition, appellant alleged that two of Wells Fargo's former employees testified in federal court that Wells Fargo targeted African Americans in the Baltimore, Maryland and Washington, District of Columbia areas for predatory subprime loans.

Given these expanded allegations, appellant altered each of the counts in the amended complaint. Appellant's amended negligent misrepresentation and wrongful foreclosure claims were identical to those raised in the original complaint, with one line added to incorporate by reference the additional factual bases "as if fully stated herein." Appellant's amended CPPA claim alleged that Wells Fargo's "acts, policies, and practices as documented . . . constitute intentional discrimination on the basis of race," and that Wells Fargo's lending practices resulted in "an adverse and disproportionate impact on [him] and other African Americans" stemming from policies that gave Wells Fargo's employees incentives to steer African Americans into loans with less favorable terms than those given to similarly situated Caucasians. Appellant then outlined sections of the CPPA that Wells Fargo violated while administrating his loan. Appellant also added an entirely new claim under the FHA to reflect the role of Wells Fargo's intentional discriminatory and predatory lending practices, alleging that Wells Fargo targeted African Americans through policies and practices aimed at "mak[ing] housing unavailable on the basis of race and/or color."

On January 23, 2012, Wells Fargo moved to dismiss the amended complaint on the basis that appellant's CPPA, negligent misrepresentation, and FHA claims were time-barred by the relevant statutes of limitations. According to Wells Fargo,

because each of these three racial-discrimination-based claims "involve[d] alleged misconduct that occurred, if at all, prior to origination of the 203(k) loan extended by Wells Fargo," the relevant two year and three-year respective statutes of limitations for these claims[9] began to run as of the loan's closing date — June 11, 2008 — the latest possible point at which appellant would have been apprised of any predatory lending practices and racially discriminatory animus on Wells Fargo's part. Consequently, appellant's amended claims were barred as a matter of law because appellant filed them after the respective limitation periods expired. In addition, Wells Fargo argued that appellant's wrongful foreclosure claim failed to state a claim for relief because it was based on a technical error committed by appellant.[10]

---

[9] See *supra* note 7.

[10] On February 10, 2012, the trial court heard arguments from the parties on appellant's wrongful foreclosure claim, among other issues. Wells Fargo argued that the unused portion of the funds held in appellant's escrow account consisted of money to be paid out in increments for renovations. The trial court agreed with Wells Fargo that if it had deducted the roughly $220,000 held in escrow from the balance owed in the notice of foreclosure, it would "probably be liable for a conversion claim because it [was] not [its] money to take." Thus, Wells Fargo argued that as a matter of law it could not "be liable for having given an improper amount in the notice, where it included the amount that [appellant] borrowed, and [this amount] was held for his benefit."

On September 18, 2012, the trial court granted Wells Fargo's motion to dismiss appellant's CPPA, negligent misrepresentation, and FHA claims in the amended complaint because these claims did not "relate back" to the original complaint, but rather were rooted in new allegations of predatory lending and racial discrimination.[11]  The court reasoned that, because the allegations in the original complaint pertained to Wells Fargo's competence in processing appellant's loan and whether Wells Fargo made negligent representations about the loan, "there was no way [Wells Fargo] could have been put on notice" that appellant would raise a lawsuit on these bases.  It found that the "only point in common with the claims in the original [c]omplaint and the claims in the . . . [a]mended [c]omplaint is the fact that a 203(k) loan was involved."  Consequently, because the claims did not "relate back," they were time-barred under the respective statutes of limitations.

The trial court also dismissed appellant's wrongful foreclosure claim because the claim was based on a technical miscalculation on appellant's part and, as a result, could not support a claim for wrongful foreclosure when appellant was

---

[11]  *See* Super. Ct. Civ. R. 15 (c)(2) (stating that an amendment of a pleading relates back to the date of the original pleading when "the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading").

neither harmed nor prejudiced by the notice of foreclosure. Specifically, the trial court noted that "[u]nder a 203(k) loan[,] . . . the monies loaned for renovation costs are placed in an escrow account where Wells Fargo . . . has no right of possession over the escrowed monies. Rather it is the borrower who has constructive possession of those monies." Accordingly, the reason that the balance calculated by Wells Fargo was higher than the amount calculated by appellant was because appellant failed to include the escrow funds in the balance owed. This appeal followed.

## II.    Discussion

"We review *de novo* the trial court's dismissal of a complaint pursuant to Super. Ct. Civ. R. 12 (b)(6)" for failure to state a claim upon which relief can be granted. *Logan v. LaSalle Bank Nat'l Ass'n*, 80 A.3d 1014, 1019 (D.C. 2013) (citation omitted). "We apply the same standard as the trial court, meaning we accept the allegations of the complaint as true," *In re Curseen*, 890 A.2d 191, 193 (D.C. 2006) (citations and internal quotation marks omitted), "including reasonable inferences therefrom, and constru[e] the complaint in the light most favorable to the appellant." *Oparaugo v. Watts*, 884 A.2d 63, 79 (D.C. 2005). "However, factual allegations must be enough to raise a right to relief above the speculative

level . . . ." *Chamberlain v. Am. Honda Fin. Corp.*, 931 A.2d 1018, 1023 (D.C. 2007) (internal quotation marks and brackets omitted) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007)). This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" thus requiring "the plaintiff [to] plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted).

### A. Whether the CPPA, Negligent Misrepresentation, and FHA Claims "Relate Back" to the Original Complaint

On appeal, appellant argues that the CPPA, negligent misrepresentation, and FHA claims in the amended complaint "relate back" to the original complaint for statute of limitations purposes because they arose out of the same 203(k) loan, and thus, out of the "same transaction or occurrence" for purposes of the "relation back" doctrine. We agree with respect to the CPPA and negligent misrepresentation claims, but disagree with respect to the FHA claim.

For the purposes of Rule 15 (c)(2), an amended pleading relates back to the date of the original pleading when the claim asserted in the amendment "arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading," a question of law that we review *de novo*. *Wagner v. Georgetown Univ. Med. Ctr.*, 768 A.2d 546, 555 (D.C. 2001) (internal quotation marks omitted); Super. Ct. Civ. R. 15 (c)(2). In addition to this rule-based standard, the original complaint must have "put the defendant on notice that a certain range of matters was in controversy and the amended complaint [must] fall[] within that range." *Hartford Accident & Indem. Co. v. District of Columbia*, 441 A.2d 969, 972 (D.C. 1982) (citation omitted) (holding that an amended complaint for the balance due under a contract relates back to the original complaint for breach of that contract).

An amendment will relate back when it seeks to "expand upon[,]" "clarify[,]" or "amplify[] the *facts* already alleged in support of a particular claim," but will be treated more cautiously when it "significantly alter[s] the nature of a proceeding by injecting new and unanticipated *claims*." *United States v. Hicks*, 350 U.S. App. D.C. 279, 287, 283 F.3d 380, 388 (2002) (emphasis added) (citation omitted) (quoting *Bowles v. Reade*, 198 F.3d 752, 762 (9th Cir. 1999)) ("If the amended complaint alleged a new claim for relief that arose out of different

conduct or transactions it would not relate back to the original complaint."); *see also United States v. Thomas*, 221 F.3d 430, 436 (3d Cir. 2000)) (stating that an amendment will relate back if it seeks "to correct a pleading deficiency by expanding the facts but not the claims alleged in the petition"). An amendment will not relate back when it attempts to "introduce a *new* legal theory based on facts different from those underlying the timely claims." *Hicks, supra*, 150 U.S. App. D.C. at 287, 283 F.3d at 388 (emphasis added) (citations omitted); *see also Mayle v. Felix*, 545 U.S. 644, 650 (2005). Allowing such a claim to relate back would effectively "fault [appellee] for conduct different from that identified in the original complaint." *Meijer, Inc. v. Biovail Corp.*, 533 F.3d 857, 866 (D.C. Cir. 2008). However, an amendment that *changes* the legal theory may relate back if "the factual situation upon which the action depends remains the same and has been brought to the defendant's attention by the original pleading." *Wagner, supra*, 768 A.2d at 556 (emphasis added) (citing 6A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 1497 (2d ed. 1990)).[12]

---

[12] This is so because the original complaint serves to instruct the defendant that "the whole transaction described in it will be fully sifted, by amendment if need be, and that the form of the action or the relief prayed or the law relied on will not be confined to their first statement." *Wagner, supra*, 768 A.3d at 566 (citation and internal quotation marks omitted). Accordingly, a reasonably prudent defendant "ought to have been able to anticipate or should have expected that the *character of the originally pleaded claim* might be altered or that other aspects of the conduct, transaction, or occurrence set forth in the original pleading might be

(continued . . .)

In *Wagner*, this court held that an informed consent claim in an amended complaint related back to the original complaint's allegations of negligence in the performance of surgery, even though the "amendment change[d] the legal theory on which the action initially was brought," because "the factual situation upon which the actions depend[ed] remain[ed] the same and [was] brought to defendant's attention by the original pleading." 768 A.2d at 556. The factual predicate, the performance of a surgery, remained the same, and thus served as the operative "occurrence" for purposes of Rule 15 (c)(2). *Id.* at 557. So too here, Wells Fargo's administration of appellant's 203(k) loan was the operative "conduct, transaction or occurrence" for purposes of Rule 15 (c)(2).

Turning first to the amended CPPA claim, appellant relies heavily upon an expanded factual basis to allege that Wells Fargo engaged in predatory lending practices targeted at African Americans and a pattern of racially discriminatory mortgage lending. Based on the original complaint, Wells Fargo was on notice of the factual basis for appellant's claim that it acted dishonestly and incompetently in handling his 203(k) loan including, *inter alia*, that during the loan process it "made

---

(. . . continued)
called into question." *Id.* (emphasis added) (quoting WRIGHT ET AL., *supra*, § 1497).

misrepresentations as to material facts which had a tendency to mislead," that appellant relied on these representations to his detriment, and that Wells Fargo had failed to provide a "Truth-in-Lending Disclosure." Appellant's amended complaint expanded upon and amplified these allegations, suggesting, based on newly revealed information, that the same transaction and conduct were actually motivated by a racially discriminatory animus on Wells Fargo's part. Particularly relevant to our analysis is appellant's proffered support for the existence of a "pattern or practice of illegal and discriminatory mortgage lending," based on recent revelations of experiences similar to his own throughout the "Baltimore-Washington Metropolitan Area" during the relevant time period.[13]

Consequently, the amended complaint "amplif[ied] the facts already in support of" the CPPA claim, and did not create a new claim based on "different conduct or transactions" from those in the original complaint. *Hicks, supra*, 350 U.S. App. D.C. at 287, 283 F.3d at 388 (citing *Bowles, supra*, 198 F.3d at 762). Appellant's expanded factual basis for the CPPA claim did not allege any separate conduct or transaction, but merely put the existing conduct and transaction alleged within the larger context of a pattern of similar conduct and transactions by the same actor in the same time period. *Contra Mayle, supra*, 545 U.S. at 650

---

[13] See *supra* note 8.

(holding that a claim will not relate back when it "asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth"). Rather than introducing a new claim altogether, the amended CPPA claim faults Wells Fargo for the same conduct during the same transaction that appellant brought to its attention in the original complaint, and adds another aspect of that same conduct without adding a new claim. *See Wagner, supra*, 768 A.3d at 566 (quoting WRIGHT ET AL., *supra*, § 1497) (noting that a defendant should anticipate that an original claim may be "altered" or that "other aspects of the conduct, transaction, or occurrence . . . might be called into question"). Furthermore, the original CPPA claim presented Mr. Roche's conduct as an example of "unfair and deceptive trade practices," which, if proven at trial, could support appellant's amended allegations of Wells Fargo's intentionally discriminatory subprime lending practices and discriminatory animus. *Contra Jones v. Bernanke*, 557 F.3d 670, 675 (D.C. Cir. 2009) (holding that an amended complaint's discrimination claims did not relate back because the original complaint "sets forth no facts that would support them"). Accordingly, we hold that facts supporting the amended CPPA claim fall within the range of the controversy defined in the original complaint and properly relate back. *See Hartford, supra*, 441 A.2d at 972.

Unlike the CPPA claim, however, appellant's FHA claim is an entirely new cause of action raised for the first time in the amended complaint. The original complaint did not provide an original cause of action for the FHA claim to relate back to, making it an entirely "new legal theory based on facts different from those underlying the timely claims." *Hicks, supra*, 350 U.S. App. D.C. at 287–88, 283 F.3d at 388–89 ("Congress did not intend Rule 15(c) to be so broad as to allow an amended pleading to add an entirely new claim based on a different set of facts."). Furthermore, were the FHA claim to relate back, Wells Fargo would be faulted for conduct it had no notice of in the original complaint — a violation of the FHA — and that it could not have reasonably anticipated. *See Meijer, supra*, 533 F.3d at 866; *Wagner, supra*, 768 A.2d at 566 (citation omitted). Although appellant made a passing reference in the original complaint to HUD's requirement that lenders abide by FHA standards, he never alleged that Wells Fargo's conduct during the loan approval process constituted a violation of the FHA. Accordingly, the FHA claim did not relate back to the original complaint and the trial court did not err in dismissing it as time-barred.

Of the amended claims, appellant's amended negligent misrepresentation claim most readily relates back to the original complaint. Rather than substantially altering the language of the amended claim in light of the expanded factual bases,

as with the CPPA claim, appellant merely incorporated the new facts by reference and included verbatim the existing claim from the original complaint.[14] Wells Fargo was therefore on notice "that a certain range of matters [including negligent misrepresentation] was in controversy and the amended complaint [fell] within that range." *Hartford Accident & Indem. Co., supra*, 441 A.2d at 972. Specifically, appellant renewed his claim from the original complaint that he "relied solely on . . . Wells Fargo and the . . . services of . . . Mr. Roche[] for clear advice about how to obtain a loan to purchase and renovate a property of his choice," and that during these exchanges, Wells Fargo and Mr. Roche "displayed a blatant disregard [of] its duty" to properly advise appellant about the risks of taking on the larger than necessary 203(k) loan he was offered through certain misleading tactics, such as inflating appellant's income. Accordingly, appellant claimed that Wells Fargo "made misrepresentations as to material facts which had a tendency to mislead," and that caused him to accept a riskier, larger, and less affordable loan. These

---

[14] To the extent that the amended complaint incorporates by reference the expanded facts alleging Wells Fargo's *intentionally* discriminatory practices, appellant would be alleging negligent misrepresentation based on intentional conduct, and the claim would fail to state a claim for relief. *Sherman v. Adoption Ctr. of Washington, Inc.*, 741 A.2d 1031, 1037 (D.C. 1999) (emphasis added) (citation omitted) ("Negligent misrepresentation requires that the defendants made statements that they *knew or should have known* were false, and that they *knew or should have known* would induce reliance on the part of [appellant], and that did induce such reliance."). Yet appellant's specific allegations of negligence on behalf of Wells Fargo and Mr. Roche survive without the intentional conduct alleged in the amended facts.

amendments merely "expand[ed] upon or clarif[ied] facts previously alleged," making the negligent misrepresentation claim relate back to the original complaint. *Hicks, supra*, 350 U.S. App. D.C. at 287, 283 F.3d at 388.

In sum, appellant's amended CPPA and negligent misrepresentation claims relate back, and are remanded to the trial court for further consideration. This holding comports with our interpretation of the purpose behind the relation back doctrine, favoring litigation decided on the merits, rather than on technical pleading rules. *See Pritchett v. Stillwell*, 604 A.2d 886, 890 (D.C. 1992) (citation omitted). Therefore, on the basis of the sufficient factual matter and allegations in the amended complaint outlined herein, which we construe in the light most favorable to appellant, we conclude that appellant has met his burden to "state a claim to relief that is plausible on its face," and "raise[s] a right to relief above the speculative level." *See Ashcroft, supra*, 556 U.S. at 678; *Oparaugo, supra*, 884 A.2d at 79; *Chamberlain, supra*, 931 A.2d at 1023.

### B. Whether the Wrongful Foreclosure Claim was Erroneously Dismissed

Appellant also contends that the trial court improperly dismissed his wrongful foreclosure claim. According to appellant, Wells Fargo issued a

defective notice of foreclosure by listing an inaccurate balance owed — $768,776.20 — and should have deducted the unused funds held in an escrow account for renovation purposes and a ten percent contingency from the balance owed, totaling $220,874.12, which would have reduced it to $547,902.08. This defective notice, appellant contends, rendered the foreclosure wrongful. We disagree, and hold that appellant failed to plead sufficient factual content showing that the balance owed was inaccurate or that he had suffered any harm from the alleged inaccuracy.

"[A]n action for wrongful or improper foreclosure may lie where the property owner sustains damages by reason of a foreclosure executed in a manner contrary to law." *Johnson v. Fairfax Vill. Condo. IV Unit Owners Ass'n*, 641 A.2d 495, 505 (D.C. 1994) (citation omitted). Under D.C. Code § 42-815 (c)(1)(A) (2011 Supp.), a foreclosure sale "shall not take place unless the holder of the note secured by the deed of trust, mortgage, or security instrument, or its agent, gives written notice of the intention to foreclose . . . to the person who holds the title of record." A notice of foreclosure must include certain "loan information," including: "(i) *The amount of the principal balance* and outstanding interest owed; (ii) All past due payments; (iii) Penalties; and (iv) The amount required to cure the

default and reinstate the loan, including all past due payments, penalties, and fees[.]" D.C. Code § 42-815.02 (a)(11)(B) (2011 Supp.) (emphasis added).

Generally, the statutory terms governing notice "must be strictly complied with, in order to satisfy the due process requirements of notice and opportunity to be heard." [15]   However, certain defects in notice that are not material are insufficient to invalidate a foreclosure. *See Rose v. Wells Fargo Bank, N.A.*, 73 A.3d 1047, 1051 (D.C. 2013) (listing the address as "c/o" an agent was insufficient to invalidate the notice of foreclosure). To determine whether a defect in notice is material enough to invalidate the foreclosure sale, or "merely technical or *de minimis*," we assess whether the deficiency "affects the accuracy of the notice or creates a substantial risk of misleading the record owner about any of the information contained therein." *Rose, supra*, 73 A.3d at 1051 (internal quotation marks omitted).   If Wells Fargo failed to state an accurate principal balance amount in the notice of foreclosure, our inquiry would be whether this inaccuracy

---

[15]   *Indep. Fed. Sav. Bank v. Huntley*, 573 A.2d 787, 787–88 (D.C. 1990) (citations omitted) (concluding that foreclosure was invalid for failure to comply with a provision requiring thirty-day notice, despite actual receipt of notice); *see also Bank-Fund Staff Fed. Credit Union v. Cuellar*, 639 A.2d 561, 569–70 (D.C. 1994) (invalidating foreclosure due to failure to include the cure amount in the notice of foreclosure).

is sufficient to render the notice defective and thus invalidate the foreclosure sale of the Property.

In *Cuellar*, we held that a notice of foreclosure must include an accurate cure amount, despite recognizing that appellants were aware of the accurate cure amount through a prior notice of foreclosure preceding the defective notice. *See Cuellar, supra* note 15, at 563–64, 569–70. Failing to state an accurate balance owed is similar to a defect in the cure amount because the purpose of each is to provide the homeowner with "vital information on a timely basis" during the notice period to "avoid[] potential disputes at a later time," and to "facilitate[] possible resolution of disputes about the [balance owed]." *Id.* (citation omitted). Moreover, although the requirement is a technical rule strictly construing the foreclosure notice provisions, it "places on the party best able to produce the information the obligation to make certain it is included [accurately], thereby lessening the possibility of errors." *Id.*; *see also Diaby v. Bierman*, 795 F. Supp. 2d 108, 114  (D.D.C. 2011) (deciding that "an accurate cure amount is part of the notice requirement under District of Columbia law, and failure to provide an accurate cure amount may give rise to an action for wrongful foreclosure").

In this case, however, appellant has not pled sufficient facts to show that the balance owed in the notice was inaccurate. Based on the facts alleged, appellant claimed that Wells Fargo "foreclosed upon [the] Property for the incorrect amount of $768,776.20," rather than $547,902.08. However, at no point in the complaint does appellant cite to any provision of the 203(k) loan agreement or any other governing document between the parties to suggest that Wells Fargo was required to deduct the unused funds in the escrow account when giving notice of the balance owed. *Cf. Robinson v. Deutsche Bank Nat'l Trust Co.*, 932 F. Supp. 2d 95, 105 (D.D.C. 2013) (finding insufficient factual support for the allegation that the cure amount in the notice of foreclosure was inaccurate because the plaintiff did not reference any uncredited payments or otherwise offer an explanation for the inaccuracy, other than in opposition to defendant's motion to dismiss). Although appellant included a "Cost Breakdown Detail" document that appears to reflect the amount of funds disbursed from the escrow account and the amount remaining in that account plus the ten percent contingency fee, he did not tie these amounts back to a provision in the loan agreement in any meaningful way that shows or suggests the unused funds and contingency fee should be deducted from the balance owed. In any event, the debate is semantic at best. As we understand Wells Fargo's position, it concedes that appellant could have applied the funds remaining in escrow to satisfy the amount owed as set forth in the notice of foreclosure.

Accordingly, appellant's defective notice argument fails. *See Logan, supra*, 80 A.3d at 1024 (citation omitted) (determining that even if appellant had pled sufficient factual content to show that the notice of foreclosure was "robo-signed," because the defect was "merely technical or *de minimis*," it did not render the notice defective; "[t]here [was] no indication that the notice failed to provide appellant with the information necessary to challenge the foreclosure").

In both notice and harm, appellant's failure to provide a "minimum amount of information prevents [him] from crossing the line from stating a claim that [is] possible to one that is facially plausible," *Robinson, supra*, 932 F. Supp. 2d at 106 (citing *Iqbal, supra*, 556 U.S. at 678), and for these reasons, his wrongful foreclosure claim was properly dismissed.

### III.    Conclusion

Based on the foregoing, we affirm the trial court's dismissal of the FHA and wrongful foreclosure claims, but reverse the trial court's dismissal of the CPPA and negligent misrepresentation claims. We remand the latter claims to the trial court for further consideration in accordance with our holding.

*So ordered.*

FISHER, *Associate Judge*, concurring in part and dissenting in part: I agree that the FHA and wrongful foreclosure claims were properly dismissed. However, I would strike the new allegations from the CPPA and negligent misrepresentation counts. As the trial court explained, the original complaint did not put Wells Fargo on notice that it might have to defend against these new allegations of predatory lending and racial discrimination. Whether characterized as new facts or new theories, these new allegations significantly altered the nature of the proceeding and do not relate back to the filing of the original complaint.

Nevertheless, I agree that we should remand the CPPA and negligent misrepresentation claims for further proceedings. I reach this conclusion because the amended complaint repeated (almost verbatim) the allegations set forth in the corresponding counts of the original complaint, and Wells Fargo does not dispute that the original complaint was timely. In other words, I would remand for further proceedings on the CPPA and negligent misrepresentation claims as pled in the original complaint.