*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 21-CV-0237

WINIFRED MORRIS, APPELLANT,

v.

DISTRICT OF COLUMBIA, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(2020-CA-004691-B)

(Hon. Heidi M. Pasichow, Trial Judge)

(Submitted September 30, 2022                    Decided March 18, 2024[*])

*Jason K. Clark*, for appellant.

*Karl A. Racine*, Attorney General for the District of Columbia, with whom *Caroline S. Van Zile*, Solicitor General, *Ashwin P. Phatak*, Principal Deputy Solicitor General, and *Holly M. Johnson*, Senior Assistant Attorney General, join on the brief, for appellee.

Before BLACKBURNE-RIGSBY, *Chief Judge*, HOWARD, *Associate Judge*, and THOMPSON, *Senior Judge.*

---

[*] The decision in this case was originally issued as an unpublished Memorandum Opinion and Judgment. It is now being published upon the court's grant of appellee's motion to publish.

BLACKBURNE-RIGSBY, *Chief Judge*: Appellant Winifred Morris appeals the trial court's grant of the District of Columbia's motion to dismiss her complaint for failure to state a claim on which relief can be granted. We conclude that the trial court did not err in finding that Ms. Morris' complaint failed to allege facts sufficient to establish actionable claims under the District of Columbia Human Rights Act ("DCHRA") (Count I) and the District of Columbia Whistleblower Protection Act ("DCWPA") (Count II). We affirm.

## I. Factual Background and Procedural History

Appellant Winifred Morris, a woman from Guyana and a resident of Riverdale, Maryland, was employed at the Office of the Chief Financial Officer of the District of Columbia Government Operations Cluster in the Office of Finance and Resource Management from March 1997 until her termination in February 2020. Ms. Morris took on additional assignments separate from her usual tasks in the fiscal year 2019. Each year, because she always had "Use or Lose Leave," Ms. Morris submitted requests in January for leave in December to travel and spend time with her family in Guyana. In January 2019, she submitted an annual leave request for three weeks of leave in December 2019. By November 2019, her leave was not yet approved, so she inquired about it to her Accounting Officer.[1] Her Accounting

---

[1] Ms. Morris does not provide a description of the Accounting Officer's role.

Officer responded that the leave was being reviewed by the Cluster Controller, Mr. Woldehanna.

In the first week of December 2019, a request was made for everyone in the office to update their vacation calendars.[2]  On December 10th, Ms. Morris was informed that Mr. Woldehanna and other managers had approved only one week of her annual leave request.  Ms. Morris responded that this was unacceptable because she submitted her leave request in January and she had already purchased non-refundable airline tickets.  The following day, Ms. Morris met with Mr. Woldehanna to discuss her annual leave.  Mr. Woldehanna gave Ms. Morris two options: she could either take the one week of leave in December, or not take leave at all and have all three weeks restored in the New Year when the new Accountant came on board.  Ms. Morris was not happy with these options and complained that the decision required her to pay additional money to change the ticket and pay the difference in cost for another flight.  In response, Mr. Woldehanna questioned whether the leave was approved in the system before Ms. Morris booked her tickets and told her that, regardless of when leave was submitted, its approval was dependent on ensuring the office had adequate coverage.  When Ms. Morris emphasized that she used this leave to visit her family, Mr. Woldehanna questioned

---

[2] The complaint does not specify who made the request.

4

whether they would die if they did not see her in December. Further, Mr. Woldehanna added that, while he also needed to use his leave to prevent it from being lost, Ms. Morris "[has] to think about the job and [her] colleagues."

The day after her meeting with Mr. Woldehanna, Ms. Morris brought her concerns to Mr. Bolden, Director of Financial Operations. Mr. Bolden suggested that Ms. Morris speak to Ms. Rice, Associate Chief Financial Officer. Ms. Morris explained to Ms. Rice that her family had planned a memorial for her late husband and a birthday celebration for her father during the time of her planned visit. She also noted that she had to cancel her flight and would forgo the birthday, but had to attend her late husband's memorial. After discussing the situation with Mr. Woldehanna, Ms. Rice asked if Ms. Morris would accept two weeks of leave. Ms. Morris accepted the two weeks and Mr. Woldehanna approved the leave.

When Ms. Morris returned from her leave in mid-January, she received a "Needs Improvement" performance evaluation for the period of October 31, 2018 through September 30, 2019. According to Ms. Morris, this evaluation was the worst she had ever received and included false statements about her performance. A month later, Ms. Morris' laptop was seized for about three hours, requiring Ms. Morris to complete her work in another cubicle. The day after the seizures, Ms. Morris requested three days leave to travel overseas again for a memorial for

her father, who had died while she was on vacation. Later that day, Ms. Morris was issued a letter of termination.[3] Ms. Morris claims that she had ten calendar days to appeal the decision[4] and requested a copy of her Official Personnel File, but was not able to review the file until the day before the appeal deadline. The appeal was ultimately denied.

In November 2020, Ms. Morris filed a complaint against the District of Columbia seeking relief under the District of Columbia Human Rights Act ("DCHRA"), D.C. Code Ann. §§ 2-1401.01 through 2-1404.04, and the District of Columbia Whistleblower Protection Act ("DCWPA"), D.C. Code §§ 1-615.51 through 1-615.59. Under the DCHRA, Ms. Morris alleged that the District— through Mr. Woldehanna—"knowingly and intentionally engaged in unlawful discrimination against [her] based on her sex and national origin." Under the DCWPA, Ms. Morris alleged that the District took "prohibited personnel actions" and retaliated against her because of her protected activity of complaining to her supervisors about denying her leave. In response, the District filed a Motion to Dismiss the Complaint pursuant to Superior Court Rule of Civil Procedure 12(b)(6)

---

[3] In her complaint, Ms. Morris claims that the letter of termination was issued without any reason stated and outside the protocol of the normal 30, 60, or 90-day placement on a performance improvement plan.

[4] Under 6-B D.C.M.R. § 604.2 (of the District's Personnel Manual), an aggrieved party has 30 calendar days from the agency action to file an appeal.

for failure to state a claim upon which relief can be granted. Ms. Morris opposed the motion to dismiss, and the District filed a reply. Ultimately, the trial court granted the District's motion, holding that, under the DCHRA, Ms. Morris: (1) failed to satisfy the "because of" or "substantial factor" elements necessary to survive a motion to dismiss; (2) failed to allege an adverse employment action; and (3) failed to properly plead an inference of sex or national origin discrimination. Further, the trial court held that, under the DCWPA, Ms. Morris did not allege any protected disclosures and, therefore, failed to state an actionable claim.

This timely appeal followed.

## II. Discussion

We review a trial court's dismissal of a complaint de novo. *Poola v. Howard University*, 147 A.3d 267, 276 (D.C. 2016) (citing *Comer v. Wells Fargo Bank, N.A.*, 108 A.3d 364, 371 (D.C. 2015). "In doing so, we construe the complaint in the light most favorable to the plaintiff and take her factual allegations as true." *Poola*, 147 A.3d at 276 (citing *Francis v. Rehman*, 110 A.3d 615, 620 (D.C. 2015). To survive a motion to dismiss, a complaint must plead facts sufficient to state a claim to relief that is plausible on its face. *Comer*, 108 A.3d at 371 (adopting the *Iqbal* standard). For this court, "[t]he only issue on review of a dismissal made pursuant to Rule 12(b)(6) is the legal sufficiency of the complaint . . . and a complaint should not be

dismissed because a court does not believe that a plaintiff will prevail on [their] claim." *Grayson v. AT&T Corp.*, 15 A.3d 219, 228-29 (D.C. 2011) (internal quotation marks omitted). While a complaint attacked by a motion to dismiss under Rule 12(b)(6) need not contain detailed factual allegations, the plaintiff must allege more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Mazza v. House Craft LLC*, 18 A.3d 786, 790 (D.C. 2011) (quotation mark omitted) (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (quoting *Bell Atlantic Corp., v. Twombly*, 550 U.S. 544, 555 (2007))). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations," *Potomac Dev. Corp. v. District of Columbia*, 28 A.3d 531 (D.C. 2011) (quoting *Iqbal*, 550 U.S. at 678-79), that allow the court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *Comer*, 108 A.3d at 371.

## A. Count I: Violation of the DCHRA

Under the DCHRA, it is illegal for an employer to discriminate against an individual on the basis of actual or perceived race, color, religion, national origin, sex, age, or other prohibited reasons. D.C. Code § 2-1402.11. In her complaint, Ms. Morris alleges that, by denying her request for leave, issuing a failing performance evaluation, and terminating her without any reason stated and outside of protocol, the District knowingly and intentionally engaged in unlawful

discrimination against her on the basis of sex and national origin and that her male and U.S.-born colleagues were not subject to the same actions. In its motion to dismiss, the District argued that Ms. Morris failed to demonstrate that the actions against her were motivated by her sex or national origin and that similarly situated men and people of other national origins were treated differently. The trial court ruled that Ms. Morris did not allege facts sufficient to survive the motion to dismiss because she failed to satisfy the "substantial factor" element of her claim. We agree.

### 1. Legal Standard

To succeed on a claim of discrimination under the DCHRA, the plaintiff must establish that they were discriminated against because of their membership in a protected class. *McFarland v. George Washington University*, 935 A.2d 337, 346-47, 352 (D.C. 2007). To survive a motion to dismiss her DCHRA claim, the factual allegations in Ms. Morris' complaint must be well-pled and plausibly give rise to an entitlement for relief. *Mazza*, 18 A.3d at 790. In other words, Ms. Morris' complaint must plead facts that, when taken as true, "provide a reason to believe" or "support a plausible inference" that she was terminated because of her sex or national origin. *Poola*, 147 A.3d at 280. We conclude that Ms. Morris did not plead facts sufficient to satisfy this standard.

## 2. Analysis

Specifically, Ms. Morris' complaint does not contain sufficient factual allegations to make her claim of discrimination plausible. Beyond the mere conclusory statement that her "male and U.S.-born colleagues were not subjected to the same actions . . . and termination of employment," Ms. Morris failed to allege in her complaint that these colleagues had jobs similar to hers or that they were similarly situated to her. *See contra Poola*, 147 A.3d at 280 (appellant plausibly alleged that her discriminatory treatment was the result of an intent to prevent a non-African American female from eclipsing the careers of African American and male faculty). A plaintiff can use certain aspects of employment—such as job titles, responsibilities, education, experience, or work records—to demonstrate that they are similarly situated to other employees. *McFarland*, 935 A.2d at 353 (citing *Leadbetter v. Gilley*, 385 F.3d 683, 691 (6th Cir. 2004) and *Zaccagnini v. Chas. Levy Circulating Co.*, 338 F.3d 672, 675-76 (7th Cir. 2003)). Ms. Morris, however, makes no such mention of any employment characteristics and she does not compare her situation to other employees, much less "demonstrate that all of the relevant aspects of their employment situations are nearly identical." *Id.* (brackets omitted) (citing *Neuren v. Adduci, Mastriani, Meeks & Schill*, 43 F.3d 1507, 1514 (D.C. Cir. 1995)). Additionally, the facts suggest that, rather than being denied for sex and/or national origin discrimination reasons, Ms. Morris' leave request was denied to

ensure adequate coverage for the office. In her complaint, Ms. Morris states that a request was made in early December for all employees to update their vacation calendar and that Mr. Woldehanna told her to think about the job and her colleagues in response to her complaining about the denial of her full leave request. These statements suggest that, aside from her membership in a protected class, there is a non-discriminatory, alternative explanation for Ms. Morris' termination. *See Poola*, 147 A.3d at 280.

Further, Ms. Morris' allegations do not go beyond "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Poola*, 147 A.3d at 278 (internal quotation marks omitted) (quoting *Comer v. Wells Fargo Bank, N.A.*, 108 A.3d 364, 371 (D.C. 2015)). *Poola* held that the plaintiff's complaint contained factual allegations that were sufficient to establish a plausible claim of discrimination because it alleged that she was a member of a protected class, described the alleged discriminatory animus in detail, and alleged a culture of discrimination where similarly situated members of her protected class were treated the same, but non-members were not. 147 A.3d at 278-79. Unlike the plaintiff in *Poola*, Ms. Morris merely states that the employment actions were taken against her because she "used leave she was entitled to so she could visit her family in Guyana," but does not provide evidence of alleged discriminatory animus or a culture of discrimination.

Thus, Ms. Morris' complaint did not contain all of the necessary allegations, nor did it plead particular facts, to make her claim of discrimination plausible. We conclude that the trial court did not err in granting the District's motion to dismiss the complaint for failure to state a claim upon which relief can be granted.

## B. Count II: Violation of the DCWPA

The DCWPA protects District employees from prohibited personnel actions or retaliation when they make a protected disclosure. D.C. Code §§ 1-615.51 and 1-615.53. In her complaint, Ms. Morris alleges that the District retaliated against her by issuing her a failing performance evaluation and terminating her (outside of protocol) after she complained to her superiors about Mr. Woldehanna's failure to approve her annual leave request. The District argued, in opposition, that Ms. Morris' complaining about Mr. Woldehanna's behavior to her superiors is not a protected disclosure under the DCWPA and, thus, cannot support a DCWPA claim. The trial court ruled that Ms. Morris did not properly plead that the District violated the DCWPA because she "fail[ed] to allege any of the statutorily defined 'protected disclosure[s].'" We agree.

### 1. Legal Standard

To succeed on a DCWPA claim, "a plaintiff must show that [they] 'made a protected disclosure, that a supervisor retaliated or took or threatened to take a

prohibited personnel action against [them], and that [their] protected disclosure was a contributing factor to the retaliation or prohibited personnel action.'" *Stewart v. District of Columbia*, 290 A.3d 937, 943 (D.C. 2023) (quoting *Wilburn v. District of Columbia*, 957 A.2d 921, 924 (D.C. 2008)). "Prohibited personnel action" includes "threatened, or actual termination, demotion, suspension, or reprimand." D.C. Code § 1-615.52(a)(5)(A). A "protected disclosure" is:

> "[A]ny disclosure of information, not specifically provided by statute, without restriction to time, place, form, motive, context, forum, or prior disclosure made to any person by an employee or applicant, including a disclosure made in the ordinary course of an employee's duties by an employee to a supervisor or a public body that the employee reasonably believes evidences:
> (A) Gross mismanagement;
> (B) Gross misuse or waste of public resources or funds;
> (C) Abuse of authority in connection with the administration of a public program or the execution of a public contract;
> (D) A violation of a federal, state, or local law, rule, or regulation, or of a term of a contract between the District government and a District government contractor which is not of a merely technical or minimal nature; or
> (E) A substantial and specific danger to the public health and safety.

D.C. Code § 1-615.52(a)(6). "A 'protected disclosure' is one that the employee 'reasonably believes' evidences one or more of the circumstances delineated in [the DCWPA]." *Wilburn*, 957 A.2d at 925 (quoting D.C. Code § 1-615(a)(6)). The

purported whistleblower must show that, at the time the disclosure was made, they had an objectively reasonable subjective belief that the alleged misconduct rose to the level of seriousness required under the DCWPA. *Stewart*, 290 A.3d at 943 (citing *Freeman v. District of Columbia*, 60 A.3d 1131, 1151 (D.C. 2012)); *Johnson v. District of Columbia*, 225 A.3d 1269, 1276 (D.C. 2020). Although more categories are enumerated under the statute, only two are relevant in the present case: "gross mismanagement" and "a violation of a . . . law, rule, or regulation."

## 2. Analysis

Ms. Morris contends that the District violated their rules and regulations under the District's Personnel Manual[5] (the "DPM") by waiting eleven months to respond to her leave requests, and that her subsequent complaint to her supervisors constituted a protected disclosure under the DCWPA. Ms. Morris, however, does not point to a specific law, rule, or regulation that was violated and, as such, has arguably waived her claim that she made a protected disclosure. *District of Columbia v. Poindexter*, 104 A.3d 848, 858 (D.C. 2014) (citing *Langer v. Dep't of Treasury*, 265 F.3d 1259, 1266 (Fed. Cir. 2001)).

---

[5] The District Personnel Manual is contained in Title 6B of the D.C. Municipal Regulations. In relevant part, the DPM states, "[A]nnual leave shall be requested and approved no later than twenty-four (24) hours prior to the day on which the annual leave is to be used." 6-B D.C.M.R. § 1235.2.

As a threshold matter, the DPM does not apply to employees of the Office of the Chief Financial Officer. *See* 6-B D.C.M.R. § 1600.2(c) ("The provisions of this chapter apply to all District government employees except the following: . . . Employees organized under the Office of the Chief Financial Officer."). Therefore, Mr. Woldehanna could not violate the DPM as Ms. Morris suggests.

In any event, we conclude that, while Ms. Morris plausibly alleged that she had a "reasonable and genuine contemporaneous belief that the actions [she] disclosed rose to the level of seriousness required under the DCWPA," *Johnson*, 225 A.3d at 1276 (citing *Zirkle v. District of Columbia*, 830 A.2d 1250, 1260 (D.C. 2003)), she did not demonstrate that that belief was objectively reasonable. *Stewart*, 290 A.3d at 943.

Ms. Morris' statements that the DPM requires managers to promptly approve or deny a request for leave and that she was issued a letter of termination outside the normal protocol evidence her subjective belief that Mr. Woldehanna was in violation of these rules and protocols when she spoke to her superiors. For decades, Ms. Morris requested, and was approved for, leave in December. It is, thus, plausible that Ms. Morris believed that the protocol for leave requests was to submit them as soon as possible. Ms. Morris also stated that she understood that according

to the DPM, a manager could not wait until three days prior to someone's travel to approve leave. Further, Ms. Morris alleged that she was issued a termination letter outside the protocol of being placed on a performance plan and was not given the necessary documentation to pursue an appeal until right before the appeal deadline. It is plausible that Ms. Morris subjectively believed these actions to be violations of the DPM based on her twenty-three years of working at the office. It is also plausible to believe that Ms. Morris' beliefs about office protocol stemmed from her observation of office management and policies.

While Ms. Morris' statements indicate that she believed Mr. Woldehanna was in violation of the DPM—she alleges that she received a failing performance evaluation and termination outside of protocol—, she failed to explicitly point to a specific law, rule, or regulation that was violated by the alleged actions and, thus, waived her claim that she made a protected disclosure. *Poindexter*, 104 A.3d at 858. For instance, this court has found that where the party briefly touches on a specific regulation that has been violated, but fails to provide a factual basis for the violation, a reasonable jury could not conclude that the party made a protected disclosure. *Id.* at 858-59. Ms. Morris states in her complaint that Mr. Woldehanna acted outside of protocol and alleges that his behavior was in violation of the DPM. However, she fails to adequately allege, with reference to a specific regulation, why these actions violated the DPM. However, to satisfy the requirements of a DCWPA claim, that a

disclosure was of the type covered by the act, Ms. Morris must plead facts sufficient for us to determine that her subjective belief that Mr. Woldehanna violated the DPM was also objectively reasonable. A belief is objectively reasonable where "a disinterested observer with knowledge of the essential facts known to and readily ascertainable by the employee [could] reasonably conclude that the actions of the government evidence [illegality]." *Zirkle*, 830 A.2d at 1259-60 (second bracket in original) (quoting *Lachance v. White*, 174 F.3d 1378, 1381 (Fed. Cir. 1999)). *See Wilburn*, 957 A.2d at 925 ("For there to be a protected disclosure, 'an employee must disclose such serious errors by the agency that a conclusion that the agency erred is not debatable among reasonable people.'") (quoting *White v. Department of the Air Force*, 391 F.3d 1377, 1382 (Fed. Cir. 2004)). This test includes the consideration of "whether the employee reasonably should have been aware of information that would have *defeated* [their] inference of official misconduct." *Ukwuani v. District of Columbia*, 241 A.3d 529, 552 (D.C. 2020) (internal quotation marks omitted) (quoting *Freeman*, 60 A.3d at 1152).

A disinterested observer with knowledge of the essential fact (that Mr. Woldehanna and Ms. Morris were not governed by the rules in the DPM) would

not conclude that Mr. Woldehanna violated the manual.[6]  Even if Ms. Morris was not aware that the regulations in the DPM were not applicable to her, the knowledge was readily ascertainable as it is available online.  Further, Ms. Morris, a more than twenty-year veteran of the Office, should have been aware that the DPM was inapplicable to Mr. Woldehanna's conduct.  This lack of awareness summarily defeats her claim of official misconduct.  *Ukwuani*, 241 A.3d at 552.

Additionally, Ms. Morris does not plausibly allege that Mr. Woldehanna's behavior constituted gross mismanagement rather than a difference of opinion regarding the handling of her leave request.  Gross mismanagement is "management action or inaction that creates a substantial risk of significant adverse impact on the agency's ability to accomplish its mission" and consists of more than "de minimis wrongdoing or negligence."  *Poindexter*, 104 A.3d at 855 (citations omitted).  "Mere differences of opinion between an employee and . . . [a] supervisor as to the proper approach to a particular problem or the most appropriate course of action do not rise to the level of gross mismanagement."  *Id.* (internal quotation marks omitted) (quoting *White*, 391 F.3d at 1381); *see Ukwuani*, 241 A.3d at 553 (holding that appellant's "purely subjective perspective" on an agency process is insufficient to

_____

[6] Even if the DPM applied to the Office, Ms. Morris' understanding that "a manager cannot wait until three days prior to someone's travel to approve one week [of leave]" is incorrect.  *See supra* note 7.

lead to the conclusion that appellant made a protected disclosure under the WPA) (quoting *Poindexter*, 104 A.3d at 858). Ms. Morris alleges a mere difference of opinion: she thought that she was entitled to three weeks of leave as she had been approved for in previous years, and Mr. Woldehanna did not. *See Johnson*, 225 A.3d at 1279 ("The DCWPA is intended to protect employees who disclose matters of public import rather than to authorize judicial review of personnel decisions or second-guessing of administrative priorities.").

Further, Ms. Morris did not point to any policy that required the approval of leave as requested or the approval of leave within a specific time period. The decision of when to approve her leave (and how much to approve) was up to debate. *Poindexter*, 104 A.3d at 856 (holding that, because a certain practice was inconsistent, the decision to proceed in a certain matter was merely debatable). Further, the facts alleged in the complaint suggest that Mr. Woldehanna's primary goal in denying Ms. Morris' leave request was to ensure sufficient coverage at the end of the year: "[i]n the first week of December 2019, a request was made for everyone in the office to update their vacation calendar"; "Mr. Woldehanna countered with . . . .'[y]ou have to think about the job and your colleagues.'" Mr. Woldehanna's decision hardly rises to the level of creating a substantial risk of significant adverse impact on the Office's ability to accomplish their mission. In fact, it appears to do just the opposite and it is plausible to presume that

Mr. Woldehanna made his decision to ensure adequate coverage at the Office which would prove beneficial. Even if there was mismanagement or a policy violation, any mismanagement was not "gross" and any violations were minimal in nature as Ms. Morris still received two weeks of leave and was given the option to maintain all of her "Use or Lose Leave." *See Johnson*, 225 A.3d at 1276 (holding that alleged violations of a law, rule, or regulation must not be "merely technical or minimal in nature") (citing D.C. Code § 1-615.52(a)(6)(D)).

Thus, Ms. Morris' failure to allege that she reported an objectively reasonable subjective belief that Mr. Woldehanna violated a law, rule, or regulation and/or engaged in gross mismanagement necessarily means that she did not plead, with particularity, facts sufficient to make her claim that she made a protected disclosure under the DCWPA plausible.

### III. Conclusion

Accordingly, Ms. Morris failed to state a claim under which relief could be granted under both the DCHRA and the DCWPA, and the trial court's order is affirmed.

*So ordered.*